21224

The STATE, Respondent, v. Jesse Clark ROBINSON, Appellant.
(262 S. E. (2d) 729)

*Michael P. O'Connell,* Charleston, *for appellant.*

*Atty. Gen. Daniel R. McLeod,* and *Asst. Atty. Gen. Russell D. Ghent,* Columbia, and *Sol. Capers G. Barr, III,* Charleston, *for respondent.*

January 16, 1980.

LITTLEJOHN, Justice:

Appellant Jesse Clark Robinson was convicted by a jury of the murder of Calup Haynes and sentenced to life imprisonment. He appeals the conviction, contending that errors of law occurred at trial. Finding no error, we afirm.

Robinson first objects to the introduction of certain photographic identification by the State. During the investigation of the murder, Charleston police officers presented a series of six photographs from their files to fourteen-year-old Veronica Clements, the only eyewitness to the shooting. At that time, she identified Robinson's photograph as being that of the assailant. At a subsequent police line-up of Robinson and others at the jail, Clements identified another individual as the assailant.

After the defense cross-examined Clements about her failure to identify Robinson at the police line-up, the State

introduced the photograph of Robinson, along with the other five photographs. No in-court identification was allowed by the trial judge. While Robinson does not contest the fairness of the photographic identification, he contends that the introduction of his photograph was error under *State v. Denson,* 269 S. C. 407, 237 S. E. (2d) 761 (1977).

Robinson's photograph, as well as the others, consisted of three different poses: (1) a full frontal pose, (2) a profile, and (3) a frontal view of the head and shoulders. These poses are often referred to as ("mug shots"). The poses were combined on a single photograph and, upon instruction of the court, all written material on the face of the photograph was blackened out.

*Denson* dealt with the issue of the reliability of a photographic identification. In its decision, this court acknowledged that *United States v. Harrington,* 490 F. (2d) 487 (2nd Cir. 1973), had listed three prerequisites to a ruling that the introduction of "mug shot" type photographs does not result in reversible error:

"1. The Government must have a demonstrable need to introduce the photographs; and

2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implication of the photographs." 269 S. C. at 412, 237 S. E. (2d) at 764.

Here, as in *Denson,* each prerequisite was present prior to the admission of the evidence.

The State had a demonstrable need to introduce Robinson's photograph. The defense had placed great emphasis on Clements' failure to identify Robinson at a police line-up and her description of the assailant after the shooting. On redirect examination, the State properly brought out Clem-

ents' earlier identification of Robinson through the photographic line-up. The photographs were introduced to show the jury that the photographic identification was valid and reliable. The weight to be accorded each identification remained in the province of the jury.

Likewise, the photographs do not necessarily imply that Robinson had a prior criminal record and thus place his character in issue. While the photographs are police "mug shots," there was nothing on the face of the pictures which would indicate that Robinson had a prior criminal record. The jury could just have easily inferred that the photograph was the result of the investigation of the murder. Since there was nothing to draw particular attention to the source or implications of the photograph, its admission was proper. The requisites of *United States v. Harrington, supra,* were met.

Robinson next argues that the trial judge erred in declaring State's witness Anthony German hostile and allowing the State to cross-examine him concerning a written statement he had given to the police officers. German (Robinson's brother-in-law) gave the statement to the officers, reciting that he had talked with Robinson the day after the killing. German admits having told the officers the following, which is quoted from the written statement: "Then he [Robinson] told me some lady saw him shoot the guy in front of Maybell's because he and the guy had an argument a few days before that. Jesse [Robinson] told me that if it goes down would I testify in his behalf that he was with me all evening on 10-15-77 and I told him I would testfiy that I had been with him."

On direct examination, the solicitor, referring to the conversation between German and Robinson, asked German: "What did he say, if anything, Mr. German?"

He answered:

"He just asked me did I hear anything about a shooting and I told him no. He just said that he had just been accused of something he did not do."

This testimony in court being inconsistent with the written statement which German had given, the solicitor asked that the jury be excused. In the absence of the jury, he pursued the statement which German had given to the police officers. There can be no doubt but that the testimony was different from the statement and was prejudicial. In the statement, German represented that Robinson had stated that he had been seen shooting ". . . the guy in front of Maybell's . . ." In his testimony before the jury, German quoted Robinson as saying that he ". . . had just been accused of something he did not do." Robinson argues that the solicitor was not surprised by the testimony because of a statement made by defense counsel to the solicitor during the lunch hour the day of the trial. In the absence of the jury, defense counsel said to the court:

"Your Honor, over the lunch hour I informed Mr. Bell that in fact he would not testify—this witness would not testify verbatim to what was stated in that statement. And, in fact, that he would say in essence, as close as I can recall that some—that just stated to him that some woman claimed to have seen him shoot the other fellow in the village. Not the statement that was in the statement itself. I informed Mr. Bell of that discrepancy in what the witness would—" That is the total showing so far as placing the solicitor on notice is concerned. Defense counsel did not notify the solicitor that the State's own witness would give to the jury Robinson's self-serving statement of his alleged innocence.

In such matters, the trial judge is present and must judge the impact of counsel's statement. The judge said: "I don't regard that as sufficient notice." No doubt the judge took into consideration the fact that defense counsel did not represent the witness and was not authorized to speak in his behalf. The witness himself did not advise the solicitor that he would change his story and, in fact, admitted under oath that he reaffirmed the statement to the solicitor on the day before the trial, in the presence of the officers.

If counsel considered his comment to the solicitor sufficient to eliminate the surprise element, he might have properly notified the court before German was permitted to give the prejudicial testimony to the effect that Robinson said he had been accused of something he did not do. The judge's handling of this issue was well within the discretionary authority allowed.

Finally, Robinson asserts that the trial judge erred in failing to charge the jury with a charge on identification, commonly known as the *Telfaire* instruction. See *United States v. Telfaire,* 469 F. (2d) 552 (D. C. Cir. 1972).

Article V of the South Carolina Constitution prohibits judges from charging juries in respect to matters of fact. Under the circumstances of this case, the trial judge was correct to decline the *Telfaire* charge. The trial judge must refrain from intimating "to the jury his opinion of the case, what weight or credence should be given to the evidence and participating in any manner with the jury's finding of fact." *State v. Pruitt,* 187 S. C. 58, 196 S. E. 371 (1938).

Additionally, as in *State v. Motes,* 264 S. C. 317, 215 S. E. (2d) 190, 194 (1975), the instructions given by the court "adequately focused the attention of the jury on the necessity for a finding that the testimony identified defendant as the offender beyond a reasonable doubt; therefore, no prejudice resulted to defendant from the failure to give the requested instruction." *See, also, State v. Jones,* S. C. 259 S. E. (2d) 120 (1979).

The judgment is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.