513 S.E.2d 626

**The STATE, Respondent,**

v.

**Lawrence Edward MOORE, Appellant.**

**No. 2950.**

Court of Appeals of South Carolina.

Heard Dec. 9, 1998.

Decided Feb. 22, 1999.

Rehearing Denied May 8, 1999.

412

Assistant Appellate Defender Melissa J. Reed Kimbrough, of Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

STILWELL, Judge:

Lawrence Edward Moore was convicted of second degree burglary and grand larceny. On appeal, Moore contends the trial court erred in refusing to suppress an eyewitness's identification.[1] We reverse and remand.

## FACTS

On June 11, 1996, Steven Bell's motorcycle was stolen while it was parked outside his apartment in Greenwood, South

---

1. Terrance Wideman was tried and convicted with Moore and raises the same issue on appeal. *See State v. Wideman,* Op. No. 99–UP–101 (S.C.Ct.App. filed February 22, 1999).

Carolina. On the same day, Bell's apartment was broken into and ransacked and his personal property was stolen.

· Bell's neighbor Stephanie Davis called the police after she observed two men with bags on their shoulders coming from the rear of Bell's residence while she knew Bell was at work. When Davis went to the side of the house and asked the men what they were doing, they fled in opposite directions.

Davis described both men as African–Americans. She said the taller man was thin, had a dark complexion, and wore a white T-shirt, bluejean shorts, and a white ball cap. Davis momentarily saw the side of his face and saw that his hair was braided after his cap fell off. The other man had a lighter complexion and wore pants, a light shirt, and a black hat. Davis did not see his face at all.

Approximately an hour after calling police, Davis was driven in a police car to a location where police were detaining two black men, Moore and Wideman. Moore and Wideman were surrounded by police officers and were the only suspects shown to Davis.

Moore and Wideman's clothing matched the clothing of the men Davis had seen earlier. At the show-up, Davis recognized Wideman as someone she knew by the name of "Coochie Terry." According to Davis, Wideman was the man she had gotten the best look at earlier when she saw his face briefly from the side. Davis stated Moore had been running and was sweating heavily and that a black hat lay on the ground next to him.

Davis identified both Moore and Wideman as the two men she had seen running from Bell's yard. Davis testified she based her identification on the clothing Moore and Wideman were wearing and the fact that Wideman had braided hair.

## DISCUSSION

On appeal, Moore argues the trial court erred in failing to suppress Davis's identification testimony. He contends her identification was tainted by the show-up procedure which created a substantial likelihood of misidentification.

■ The conduct of trial, including the admission and rejection of testimony, is largely within the trial court's sound

discretion, the exercise of which will not be disturbed on appeal absent an abuse of discretion or the commission of a legal error which results in prejudice to the defendant. *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941).

■ A criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Single person show-ups are disfavored because they are suggestive by their nature. *See State v. Johnson,* 311 S.C. 132, 427 S.E.2d 718 (Ct.App.1993). It is well established, however, that an identification may be reliable under the totality of the circumstances even when the procedure has been suggestive. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Gambrell,* 274 S.C. 587, 266 S.E.2d 78 (1980).

■ In determining the reliability of an identification, the following factors are considered: 1) the opportunity of the witness to view the criminals at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the amount of time between the crime and the confrontation. *See Neil,* 409 U.S. at 199, 93 S.Ct. 375; *State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980). After the trial court determines the witness's identification is reliable, the witness is permitted to testify before the jury.

■ In determining that Davis's identification was admissible the court stated: "The court's finding is that there is evidence—*I won't say reliable,* but I think that's a matter for the jury—that she can identify them. I don't find it unduly suggestive. I find the issues—the weight is a matter for the jury." (Emphasis added.) The court did not evaluate the reliability of Davis's identification in light of the above factors and did not make a determination that her identification was reliable. This was error.

■ "Reliability is the linchpin in determining the admissibility of identification testimony. . . ." *Manson v. Brathwaite,* 432 U.S. 98, 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The

court clearly did not exercise its discretion but instead erroneously decided reliability was a jury issue. Although the admission of evidence at trial is within the court's discretion, the failure to exercise that discretion is an abuse of discretion. *See State v. Smith,* 276 S.C. 494, 280 S.E.2d 200 (1981); *Samples v. Mitchell,* 329 S.C. 105, 495 S.E.2d 213 (Ct.App. 1997). Here, the failure of the trial court to undertake the analysis articulated by the United States Supreme Court for use when there has been a suggestive identification procedure was an abuse of discretion.

■ We can not say this error was harmless. The defense presented alibi witnesses who testified they left Moore's house on foot around 10:30 a.m. on the morning of the burglary, heading towards the Walmart. The Walmart was a twenty minute walk from the Moore home. A Walmart receipt was found in Wideman's possession that indicated T-shirts were purchased at 11:04 a.m. on the day of the burglary.

According to the State's theory of the case, the burglary began around 9:00 a.m. with the theft of the victim's motorcycle and continued throughout the morning until discovered by Davis. Bell's apartment was thoroughly ransacked; dressers had been pulled out, clothes were scattered throughout the residence, mattresses had been removed from the bed and were leaning against the wall. Numerous items were missing. Police were unable to recover any fingerprints from the scene.

Davis's call to police was logged in at 11:14 a.m. A police officer walking the distance from the ransacked apartment to the shopping center containing the Walmart covered the distance in ten minutes and nine seconds. He did not however, walk all the way to Walmart.

At trial, the State presented testimony by a police officer that a police dog taken to the woods behind the ransacked apartment later reacted to Moore. This possibly ties Moore to the woods but does not place him inside the apartment. Wideman is implicated by this evidence only incidentally, if at all, because he testified he was in Moore's company all day.

The State also presented the testimony of inmate, Anthony Williams, who claimed he overheard Moore and Wideman confess to the burglary while waiting in a holding cell for a court appearance. Williams acknowledged guards were forced

to separate him from Wideman and Moore following an altercation on the same day he allegedly overheard the confession. Two other inmates present in the holding cell with Williams, Wideman, and Moore that day contradicted Williams's testimony.

As demonstrated by the record, without Davis's identification, the State's case against Moore and Wideman was tenuous. Accordingly, we find the error in admitting Davis's identification testimony without first determining that her identification was reliable was not harmless. *See State v. Singleton*, 303 S.C. 313, 400 S.E.2d 487 (1991) (finding that in the absence of overwhelming guilt, the error was not harmless). Therefore, we remand this case for the trial court to hold a hearing to determine whether, under the totality of the circumstances, Davis's identification of Wideman and Moore was reliable.

**REVERSED AND REMANDED.**

ANDERSON, J., concurs.

HOWELL, C.J., dissents in separate opinion.

HOWELL, Chief Judge, dissenting:

Because I believe that the eyewitness identification in this case was unreliable as a matter of law and that a remand for a hearing to determine the reliability of identification is therefore unnecessary, respectfully dissent.

I.

As the majority recognizes, "[a] criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Johnson*, 311 S.C. 132, 134, 427 S.E.2d 718, 719 (Ct.App.1993); *see Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). However, even if the identification procedures are suggestive, no due process violation occurs if, under the totality of the circumstances, the identification is reliable. *Neil v. Biggers*, 409 U.S. 188, 198–99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Whether an eyewitness identification is sufficiently reliable is a mixed question of law and fact subject to de novo review on appeal. *Sumner v. Mata,* 455 U.S. 591, 591–92, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) ("We agree with the Court of Appeals that the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by 2254(d)," which "requires federal courts in habeas proceedings to accord a presumption of correctness to state-court findings of fact."); *State v. Mack,* 255 Kan. 21, 871 P.2d 1265, 1269 (1994) ("An eyewitness identification due process determination is a mixed question of law and fact that should be reviewed de novo."). Of course, when determining this issue, we are "bound by fact findings in response to preliminary motions where there has been conflicting testimony or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law." *State v. Asbury,* 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997).

Thus, when considering the due process question of the reliability of an eyewitness identification, the appellate court determines the constitutional significance of the facts as found by the trial court, provided those facts are supported by the evidence. *See Biggers,* 409 U.S. at 193, n. 3, 93 S.Ct. 375 (reversing district court's conclusion in habeas proceeding that eyewitness identification was unconstitutionally suggestive and noting that question of whether district court's factual findings were clearly erroneous is "inapplicable here where the dispute between the parties is not so much over the elemental facts as over the constitutional significance to be attached to them."); *cf. State v. Brockman,* 329 S.C. 115, 121, 494 S.E.2d 440, 443 (Ct.App.1997) (When determining whether a fourth amendment violation occurred, the appellate court "defer[s] to the trial court's factual findings and review[s] them only for clear error and lack of evidentiary support, but our review is de novo on the mixed questions of law and fact under a Fourth Amendment analysis."), *cert. granted* (December 3, 1998).

## II.

After hearing testimony from the eyewitness, the trial court denied Moore's motion to suppress, stating, "The court's finding is that there is evidence—I won't say reliable, but I think

that's a matter for the jury—that she can identify them. I don't find it unduly suggestive. I find the issues—the weight is a matter for the jury."

There are several ways to interpret this ruling. First, it could be that the trial court concluded the identification procedure was *not* unduly suggestive and therefore did not reach the question of the reliability of the identification. Second, it could be that the trial court determined the identification was not reliable, but nonetheless concluded the issue should be submitted to the jury. Finally, it could be, as the majority concludes, that the trial court believed reliability was *solely* a question for the jury and that the court therefore did not determine whether the eyewitness identification was reliable. I do not believe, however, that a hearing to allow the trial court to determine the reliability of the identification is necessary under any interpretation of the court's ruling.

The facts underlying the eyewitness identification in this case are undisputed. The reliability question, therefore, is not dependent on the trial court's resolution of conflicting evidence, but instead simply involves a legal determination of the constitutional significance to be attached to the undisputed facts. *See Biggers,* 409 U.S. at 193, n. 3, 93 S.Ct. 375; *see also State v. Jenkins,* 20 S.C. 351, 352 (1884) (Double jeopardy question "is a mixed one of law and fact. The facts, however, are not disputed, and, therefore, the question of law is alone to be considered."); *cf. Asbury,* 328 S.C. at 193, 493 S.E.2d at 352 (Appellate court is "bound by fact findings in response to preliminary motions *where there has been conflicting testimony* or where the findings are supported by the evidence and not clearly wrong or controlled by an error of law.") (emphasis added); *State v. Lyles,* 211 S.C. 334, 45 S.E.2d 181, 183 (1947) ("There are cases, no doubt, so clear in nature and *undisputed in facts,* as that the court could pronounce a possession recent or not recent as a matter of law; but the question is usually one of fact for the determination of the jury.") (emphasis added). Even if the trial court determined, whether at the original trial or after a remand from this court, the identification procedure to be reliable, this Court would be called upon to review that decision and determine whether, as a matter of law, the eyewitness identification was reliable and therefore

properly admitted.[1]  Accordingly, I believe that a remand is neither necessary nor appropriate in this case, and that this Court should consider the ultimate question of the reliability and admissibility of the eyewitness identification.

## A.

Clearly, the show-up procedures used in this case were highly suggestive.  The witness was driven by a police officer in a police car to a parking lot where the defendants were standing in front of a police car.  There were "a lot of police officers" at the scene, but the defendants were the only people wearing clothes similar to those described by the witness. Defendant Moore, who ran when he was approached by the police, was leaning over and throwing up.  A police dog that had followed a trail from behind the apartments and "reacted on" Moore apparently was still at the scene.  The witness was asked by her police escort "could [she] identify—did they look familiar and did the clothing look familiar."  Under these circumstances, I conclude that the showup procedure was unduly suggestive and that the procedures were conducive to an irreparable mistaken identification.  *See, e.g., Stovall,* 388 U.S. at 302, 87 S.Ct. 1967 ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."); *Johnson,* 311 S.C. at 134, 427 S.E.2d at 719 ("[S]ingle person showups are particularly disfavored in the law.").  The question then becomes whether the identification can be considered reliable notwithstanding the suggestive nature of the procedure.

## B.

To determine whether an identification is reliable, it is necessary to consider the factors set forth in *Neil v. Biggers:*
the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the

---

1.  Because an *in camera* hearing was held in this case that allowed for a full development of the facts surrounding the identification, this case differs from *State v. Simmons,* 308 S.C. 80, 417 S.E.2d 92 (1992).  In *Simmons,* the trial court refused to hold a hearing to determine the reliability of a challenged identification.  *Id.* at 82, 417 S.E.2d at 93. The Supreme Court, therefore, remanded for a hearing on the identification.  *Id.* at 83, 417 S.E.2d at 93–94.

accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. 375; *see also Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony.... The factors to be considered are set out in *Biggers*.... Against these factors is to be weighed the corrupting effect of the suggestive identification itself."). I will discuss each of the factors below.

### (1)

The eyewitness twice saw the perpetrators, but only for mere seconds each time. The witness was never face-to-face with the men and saw them from some distance both times.[2] She never saw the full face of either man, viewing one only from behind and the other from the side. Thus, the witness had only a very limited opportunity to view the criminals.

### (2)

Because the witness was really a mere passerby, she did not have the more acute degree of attention that we generally presume a victim to have. *See State v. Ford,* 278 S.C. 384, 386, 296 S.E.2d 866, 867 (1982) ("Because [the eyewitness] was a victim as opposed to a mere passerby, his degree of attention was presumably acute."); *State v. Johnson,* 318 S.C. 372, 375, 458 S.E.2d 49, 51 (Ct.App.1995) ("[A] person in fear of his life presumably has a more acute degree of attention to his surroundings than a mere passerby.").

### (3)

It appears from the record that the witness's description of the men behind the apartment generally matched that of the

---

2. The first time the witness saw the men she was in a car at the end of her driveway, approximately 40–50 yards away from the men. She saw them the second time from the corner of her apartment after driving into the driveway and getting out of the car. While the witness testified at trial about her distance from the men the second time, the testimony was the "from-here-to-there-in-the-courtroom" type; no specific distance was ever mentioned.

defendants when they were apprehended. The witness described the men she saw behind the apartment as African–American, with one of the men being taller and darker-skinned than the other. The taller man had "braided or plaited" hair. The clothes the witness described the men as wearing were common, with no real distinguishing features—the taller man was wearing a white hat, white tee shirt, and blue shorts, while the shorter man was wearing a white tee shirt, pants or shorts, and a black hat. Other than the braided hair of one of the perpetrators, which is a relatively common hairstyle, the witness's description included no noteworthy or distinguishing details. Instead, the description of the suspects' physical characteristics and clothing was so general that many people could have satisfied it. Accordingly, that the defendants matched the witness's very general description does little to establish the reliability of the identification.

### (4)

The eyewitness's testimony indicates that she was relatively certain at the show-up that the defendants were the men she saw behind the apartment.[3] Nonetheless, given that the witness's initial description was only of very general physical characteristics and very common clothing, the certainty of her identification is less meaningful.

### (5)

Finally, the witness identified the defendants at the show-up approximately one hour after she saw the men behind the apartment. Given this short time period, the witness's recollection of the men she had seen should have been sharp. This factor, therefore, tends to indicate that the identification may have been reliable. Again, however, the importance of this factor is, in my view, diminished by the very generality of the witness's description. There were no fine details for the witness to remember; thus, that the confrontation occurred shortly after the sighting is largely unimportant.

---

3. I note, however, that only the witness testified during the *in camera* hearing. The police officers present at the show-up offered no testimony at trial as to the witness's degree of certainty at the show-up.

## C.

In my view, an analysis of the *Neil v. Biggers* factors leads to the conclusion that the witness's identification of the defendants was not reliable. Certainly, some of the factors may indicate, to some degree, that the identification was reliable. However, the first two *Biggers* factors strongly support the conclusion that the identification in fact was not reliable. That the eyewitness recognized Wideman at the show-up as someone she knew as "Coochie Terry" further supports this conclusion. Although the witness testified that she was certain at the show-up that "Coochie Terry" was the taller, darker man she had seen behind the apartment (and whose face she had seen from the side), she could not identify him as "Coochie Terry" until the show-up. The witness's failure to identify "Coochie Terry" until the show-up tends to indicate that her opportunity to view and her attention to the perpetrators was very limited, supporting the conclusion that she would not have made the identification but for the suggestiveness of the show-up.

In *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978), the West Virginia Supreme Court of Appeals was presented with a similar case. In *Kennedy*, the manager of a store interrupted a burglary and unsuccessfully pursued one of the perpetrators through the town. A few hours later, while the manager was at the police station, a suspect in handcuffs was brought to the manager, who was asked to nod if the suspect was the man he had pursued. The manager positively identified the suspect. 249 S.E.2d at 189.

The *Kennedy* court reviewed the reliability of the identification under the factors set forth in *Neil v. Biggers* and concluded that the identification was not sufficiently reliable to overcome the suggestiveness of the identification procedures. *Id.* at 190. First, the court noted that the witness had little opportunity to view the criminal given that the witness saw him only from a distance, never saw his face, and "the visibility was less than ideal." *Id.* The court questioned the witness's degree of attention, given that the witness "was undoubtedly concentrating on his task of pursuit." *Id.* As to the accuracy of the witness's prior identification, the court first questioned whether any pre-identification description had

been given, but then concluded that "[i]f any had been given it seems to be limited to a description of clothing and hair style with no mention of any distinguishing physical characteristics." *Id.* While the court acknowledged that the witness appeared very certain of his identification and that only a few hours·had passed between the pursuit and the identification, the court nonetheless concluded the identification evidence should have been suppressed:

> [The witness's] identification does have some, although admittedly few, aspects of reliability, but when these are weighed against the suggestive procedure of bringing the suspect before the identifier alone and in handcuffs the scale tips toward unreliability and the identification must be suppressed because there was a "substantial likelihood of irreparable misidentification." We agree with the Supreme Court that suggestive procedures *alone* should not be the basis of excluding an otherwise reliable identification and decline to adopt any more restrictive rule under State law; however, when suggestive procedures are connected with an identification of questionable reliability exclusion is the only remedy.

*Kennedy,* 249 S.E.2d at 190–91 (citation omitted) (emphasis original).

Similarly, I do not believe that the few factors indicating the identification in this case might be reliable are sufficient to overcome the factors that strongly indicate the identification was unreliable. Therefore, after carefully considering the totality of the circumstances surrounding the identification of the defendants in this case, I simply cannot conclude that the identification was sufficiently reliable to overcome the highly suggestive procedures and the resulting substantial likelihood of irreparable misidentification. *See In the Interest of Jamal Rashee A.,* 308 S.C. 392, 396, 418 S.E.2d 326, 329 (Ct.App. 1992) (finding identification to be unreliable where, *inter alia,* victim did not have a reasonable opportunity to view the criminals, lighting at the scene was poor, and the encounter "was of no significant duration"). I would hold that the identification was unreliable as a matter of law such that admission of evidence of the identification violated the due process rights of the defendants.

As the majority notes, the other evidence against the defendants was far from overwhelming. The error in admitting the identification testimony, therefore, cannot be considered harmless. Accordingly, I would reverse the conviction and remand for a new trial.