522 S.E.2d 845

**The STATE, Respondent,**

v.

**Ibin PATTERSON, Appellant.**

**No. 3046.**

Court of Appeals of South Carolina.

Heard Sept. 8, 1999.

Decided Sept. 20, 1999.

216

218

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Deputy Attorney General G. Robert DeLoach, III; and Solicitor Warren B. Giese, all of Columbia, for Respondent.

ANDERSON, Judge:

Ibin Patterson appeals from his convictions for armed robbery, first degree burglary, and assault and battery of a high and aggravated nature (ABHAN). We affirm.

## FACTS/PROCEDURAL BACKGROUND

Keisha Simpson was home alone on the evening of March 31, 1995, when she heard a knock on her front door. The people at the door asked if Simpson's husband, Jack, was home. She told them he was not home and watched through the peephole as they left.

Approximately fifteen minutes later, three men "busted in" Simpson's locked back door and forcibly entered her home. Before two of the men covered Simpson's head with a blanket, she recognized one of the men as Derrick Evans, a man who played basketball with her husband. Simpson did not get a good look at the other two men at that time.

The men removed Simpson's rings from her hands, held a gun to the side of her face, and demanded she tell them where the couple kept their money. Evans stayed downstairs while the other men physically dragged Simpson up the stairs on her stomach. She was eight and one-half months pregnant at the time. As the men dragged Simpson, the blanket "was coming off" of her head. By the time the men put Simpson in her bedroom closet, she could see.

While in her closet with the doors open and the closet and bedroom lights on, Simpson watched one of the men ransacking her bedroom. Simpson was able to observe him at this time for approximately five minutes. He was facing toward her while rummaging through the drawers under her waterbed. The man, armed with a gun, told Simpson she was going to die. He then asked her if she was pregnant and said he was going to kill her if she was not pregnant. At one point, this man went into the closet with Simpson and again told her she was going to die. He informed her if she were not pregnant, she would already be dead. Simpson recalled the man being in the closet with her for about five minutes. She testified the man was larger than her and, although he was not armed at that time, she feared he would rape her. She convinced him to leave the closet by urinating on herself and screaming, pretending her water broke. The man ran out of the closet and all of the men left Simpson's home. They took Simpson's jewelry, her husband's jewelry, a VCR, a Super Nintendo, and some tapes.

Once she was certain the men were gone, Simpson went downstairs and ran to the home of a neighbor, who called 911. The police arrived quickly. Simpson did not give a statement but was instead taken to the hospital. When she talked to the police at the hospital, Simpson told them she could not identify any of the men because her face was covered the entire time. She did this because she was very upset and afraid of the men, who threatened to kill her if she said anything. She did, however, tell her husband that evening that Evans was one of the men who robbed her. Simpson's husband told the police Simpson recognized one of the suspects as Derrick Evans and could identify one of the other men if she saw him again.

Simpson's husband and Evans regularly played basketball with a group of men. On the day in question, Simpson's husband received a page from Evans, who wanted to know if he would be playing basketball that evening. Simpson's husband had recently told Evans and another man from their basketball group that he had received a $3,000 insurance settlement and wanted to take them out to dinner one night.

Approximately two weeks after the incident, Simpson picked Patterson out of a photographic lineup. She was unable to

pick the third man out of a lineup. During the commission of the crime, his back was turned to her and he instructed her not to look at him. Yet, Simpson thought she recognized his voice as that of another man who played basketball with her husband.

Patterson was indicted for armed robbery, first degree burglary, and ABHAN. Before Patterson's trial, the Circuit judge held an *in camera* hearing to determine the admissibility of identification evidence. Patterson claimed any potential in-court identification was "tainted in some fashion by [the] impermissibly suggestive pre-trial procedure." The judge ruled the pre-trial photographic lineup was not "so impermissibly suggestive as to give rise to [a] substantial likelihood of misidentification." At trial, Simpson identified Patterson as the man who ransacked her bedroom, went into the closet with her, and threatened to kill her. Thereafter, the prosecuting attorney showed Simpson the photo lineup bearing Patterson's photograph. She identified Patterson as the man she had earlier picked out of the photographic lineup. The court admitted the lineup and pre-trial identification into evidence. Patterson was convicted of all three charges. The trial judge sentenced him to twenty-seven years imprisonment for armed robbery, twenty-seven years for first degree burglary, and ten years for ABHAN, with all sentences running concurrently.

## *ISSUES*

I. Did the trial court err in denying Patterson's motion for a mistrial?

II. Did the trial court err in failing to grant Patterson's motion to suppress Simpson's pre-trial identification of him?

III. Did the trial court err in denying Patterson's motion for directed verdict on the ABHAN charge?

IV. Did the trial court err in refusing to charge the jury on simple assault and battery as a lesser included offense of ABHAN?

V. Did the trial court err in refusing to give the *Telfaire*[1] instruction to the jury?

---

1. *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972).

*LAW/ANALYSIS*

## I. Mistrial Motion/Curative Instruction

██ Patterson contends the trial court erred in refusing to grant a mistrial after a police officer's testimony impermissibly suggested Patterson's photo was placed in the lineup after another suspect, Derrick Evans, named him as a participant in the crime. Patterson claims this testimony constituted an improper comment on his character. We disagree.

Prior to trial, the court held an *in camera* hearing pursuant to Patterson's motion to suppress Simpson's in-court identification of him because of an allegedly tainted pre-trial photo lineup identification. During that hearing, Investigator Wesley Bickley, with the Richland County Sheriff's Department, testified Patterson became a suspect in the case when Evans, the suspect Simpson identified by name, told Bickley that Patterson was with him during the burglary. After his interview with Evans, Bickley prepared a photographic array including Patterson's picture and showed it to Simpson. Simpson picked Patterson's photograph immediately and without hesitation.

After ruling on the suppression motion, the trial judge acknowledged Patterson's concern that it would be improper for Bickley to testify that Evans named Patterson as a suspect. The court made no final ruling at that time, but vowed to revisit the issue if it became necessary.

Later, the judge ruled Bickley could not testify he placed Patterson's picture in the photo lineup after his conversation with Evans because this would constitute an impermissible comment on Patterson's character. Despite the court's ruling, the following testimony transpired during the State's direct examination of Investigator Bickley:

Q. Investigator Bickley, I believe we left off on April the 13th when you all had executed the search warrant and then talked to Mr. Evans?

A. That's correct.

Q. Do you recall what time it was that you interviewed Mr. Evans?

A. It was approximately 1:00 in the afternoon.

Q. I show you State's exhibits [sic] No. 14 for identification. See if that—looking at that—see if that refreshes your memory?

A. Yes, sir. This is a statement administered by me to Mr. Evans.

Q. And at some point during this investigation did you have an opportunity to prepare a photo lineup?

A. Yes, I did.

Q. Do you recall when that was?

A. It was right about the same time that the interview was taking place with Mr. Evans.

Q. Who were you preparing this lineup for? This is a lineup you were preparing for Ms. Simpson?

A. That's correct.

Q. To show her?

A. Yes, sir.

Q. And whose photograph were you including in that lineup?

A. The defendant, Mr. Patterson.

Patterson objected and moved for a mistrial. The trial court denied the request and concluded: "[T]here is no manifest necessity at this time for the declaration of a mistrial." The court offered to give the jury a curative instruction, which it paraphrased to the attorneys beforehand. When asked by the court whether he would accept the curative instruction and withdraw his request for a mistrial, Patterson's counsel responded: "Without waiving our motion for a mistrial, your honor, then that language is acceptable." The court instructed the jury:

Folks, the reason I excluded you, and you as always will use your own recollection of exactly what the questions and answers were that have been put forward to you. And don't rely on mine or anybody else's. So I'm not going to tell you what the last question and the last answer were. You use your own recollection of what the last question and last answer were. I will tell you this, that the question and answer taken together may have improperly brought before you, and I say improperly with emphasis, the suggestion that there was a nexus or a connection between a conversa-

tion had by the testifying witness and a Derrick Evans, that there was a connection between that conversation and the placing in a photographic lineup of a photograph of the defendant, Ibin Patterson. You are to draw no such inference as no evidence exists in this case to support such an inference.

Generally, a curative instruction is deemed to have cured any alleged error. *State v. Jones,* 325 S.C. 310, 479 S.E.2d 517 (Ct.App.1996). *See also State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998) (instruction to disregard inadmissible evidence is usually viewed as having cured· the error in its admission); *State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996) (if trial judge sustains timely objection to testimony and gives jury curative instruction to disregard testimony, error is deemed to be cured). Here, the court thoroughly and meticulously instructed the jury to disregard any impermissible inference they may have drawn from the testimony because the facts could not support such an inference.

Because a trial court's curative instruction is considered to cure any error regarding improper testimony, a party must contemporaneously object to a curative instruction as insufficient *or* move for a mistrial to preserve an issue for review. *See George, supra* (no issue is preserved for appellate review if objecting party accepts judge's ruling and does not contemporaneously make additional objection to sufficiency of curative charge *or* move for mistrial); *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999) (finding issue relating to admission of improper testimony was preserved where defendant renewed his request for mistrial following curative instructions). Patterson did not object to the sufficiency of the curative instruction. However, he specifically reserved his mistrial motion.

The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *See State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999); *Johnson, supra; Kelsey, supra.* This Court favors the exercise of wide discretion òf the trial judge in determining the merits of such motion in each individual case. *State v. Howard,* 296 S.C. 481, 374 S.E.2d 284 (1988). Among

the factors to be considered in ordering a mistrial are the character of the testimony, the circumstances under which it was offered, the nature of the case, and the other testimony in the case. *Howard, supra.*

■ In *State v. Bilton,* 156 S.C. 324, 342, 153 S.E. 269, 276 (1930), our Supreme Court explained: "[T]he proper general rule is this: 'The American cases hold generally that there must be a manifest necessity for the discharge of the jury and leave the Courts to determine in their discretion whether under all the circumstances of each case such necessity exists.'" (Emphasis removed). Thus, our ruling must hinge on the question of whether there was a manifest necessity for declaring a mistrial. *State v. Prince,* 279 S.C. 30, 301 S.E.2d 471 (1983) (the less than lucid test is whether the mistrial was dictated by manifest necessity or the ends of public justice, the latter being defined as the public's interest in a fair trial designated to end in just judgment). A mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons. *See State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989). *See also State v. Kirby,* 269 S.C. 25, 236 S.E.2d 33 (1977) (power of court to declare mistrial ought to be used with greatest caution under urgent circumstances, and for very plain and obvious causes).

■ A mistrial should not be ordered in every case where incompetent evidence is received. *Johnson, supra.* Instead, the trial judge should exhaust other methods to cure possible prejudice before aborting a trial. *Council, supra.* An instruction to disregard objectionable evidence is usually deemed to cure the error in its admission. *See Johnson, supra.* The granting of the motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way. *Kelsey, supra.* The burden is on the movant to show not only error, but resulting prejudice in order to justify a mistrial. *Council, supra; Wasson, supra.*

A mistrial was not warranted under the circumstances of this case. The extensive curative instruction given by the trial judge cured any possible error and eliminated any conceivable prejudice. No manifest necessity for declaring a mistrial

existed. Thus, the trial court did not err in denying Patterson's motion for a mistrial.

## II. Admissibility of Pre-trial Identification

 Patterson argues the trial court erred in failing to grant his motion to suppress Simpson's pre-trial photo lineup identification of him. He avers Simpson's identification was unreliable under the totality of the circumstances. We disagree.

 The admissibility of evidence falls squarely within the sound discretion of the trial court. *See State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941); *State v. Brown,* 333 S.C. 185, 508 S.E.2d 38 (Ct.App.1998). Accordingly, evidentiary rulings of the trial court will not be set aside on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *Gregory, supra; State v. Moore,* 334 S.C. 411, 513 S.E.2d 626 (Ct.App.1999); *State v. Johnson,* 311 S.C. 132, 427 S.E.2d 718 (Ct.App.1993).

 The standard for determining the admissibility of a pre-trial photographic identification is "whether the identification procedure 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *State v. Gambrell,* 274 S.C. 587, 590, 266 S.E.2d 78, 80 (1980) (citations omitted). *See also Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (holding each case must be considered on its own facts, and convictions based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to very substantial likelihood of irreparable misidentification). A criminal defendant may be deprived of due process of law by an identification procedure that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Moore, supra; Johnson, supra.*

In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court articulated:

Some general guidelines emerge from these [pre-trial identification] cases as to the relationship between suggestiveness and misidentification. It is, first of all, apparent

that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. at 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous.

*Neil,* 409 U.S. at 198, 93 S.Ct. at 381–82, 34 L.Ed.2d at 410–11 (footnote omitted).

Even if some degree of suggestiveness exists in the pre-trial identification, suppression of the identification is not automatically required. *See Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980); *Johnson, supra.* Suggestiveness alone does not mandate the exclusion of evidence. *Neil v. Biggers, supra; Stewart, supra; Gambrell, supra.* The query posited is whether "under the totality of the circumstances the identification was reliable" even though the confrontation procedure may have been suggestive. *Stewart,* 275 S.C. at 450, 272 S.E.2d at 629. *See also Gambrell, supra* (identification may be reliable even when procedure is suggestive, depending on totality of circumstances). Reliability is the linchpin in determining the admissibility of identification testimony. *Manson, supra; State v. Denson,* 269 S.C. 407, 237 S.E.2d 761 (1977); *Moore, supra.* Reliability, in turn, depends upon several factors that must be considered in light of the totality of the circumstances. *Brown, supra.* When determining the likelihood of misidentification, the trial court must therefore evaluate "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the

confrontation." *Stewart,* 275 S.C. at 450, 272 S.E.2d at 629. *See also Neil v. Biggers, supra.*

The corrupting effect of a suggestive identification is to be weighed against these factors. *See Manson, supra; State v. Washington,* 323 S.C. 106, 473 S.E.2d 479 (Ct.App.1996). After the trial court determines the witness's identification is reliable, the witness is permitted to testify before the jury. *Moore, supra.*

In applying the current law, we first note there is no evidence whatsoever of suggestiveness in the identification procedure used in this case. None of the photographs contained within the lineup stands out from the others. We cannot determine which photograph is Patterson's because the photographs are unnumbered. The photographs used are of comparable size and composition. The subjects are similar in appearance, age, and physical characteristics. Finally, there is no evidence Investigator Bickley expressly or implicitly suggested to Simpson which photograph was of a suspect.

■ Moreover, even if the identification procedure used was suggestive, we find Simpson's identification of Patterson nevertheless reliable in light of the totality of the circumstances surrounding the confrontation. First, the record reflects Simpson had ample opportunity, at least five minutes, to view Patterson from her closet as he ransacked her bedroom. Simpson observed him again when he stood in the closet facing her and threatening her for approximately five minutes. During this time, Simpson's bedroom and closet lights were turned on. Simpson paid particularly close attention to Patterson because he was rummaging through her belongings and threatening to kill her. A person in fear of his life presumably has a more acute degree of attention to his surroundings than a mere passerby. *See State v. Ford,* 278 S.C. 384, 296 S.E.2d 866 (1982); *State v. Brown,* 333 S.C. 185, 508 S.E.2d 38 (Ct.App.1998); *State v. Johnson,* 318 S.C. 372, 458 S.E.2d 49 (Ct.App.1995).

Although Simpson's description of Patterson was not very detailed, it was consistent with his appearance. When she was shown the photographic lineup, Simpson picked Patterson's photograph immediately and without hesitation. Finally, the identification took place only two weeks after the burglary.

Our Supreme Court has on at least two occasions found reliable out-of-court identifications made after similar lapses of time. *See State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980); *State v. Gambrell,* 274 S.C. 587, 266 S.E.2d 78 (1980).

We hold Simpson's pre-trial identification of Patterson was reliable under the totality of the circumstances. The identification satisfies the criteria of *State v. Stewart, supra,* and *Neil v. Biggers, supra.* The trial court did not err in failing to grant Patterson's motion to suppress Simpson's pre-trial identification of him. Additionally, the judge properly allowed the in-court identification.

### III. Directed Verdict Motion on ABHAN Charge

Patterson maintains that because "Simpson was not injured, struck or harmed physically in any way," the trial court erred in refusing to grant his motion for directed verdict on the ABHAN charge. He asserts the jury "might have processed the evidence in this case in a manner such that they did not believe [Patterson's] actions involved circumstances of aggravation." We disagree.

Assault and battery of a high and aggravated nature is an unlawful act of violent injury to another accompanied by circumstances of aggravation. *State v. Tyndall,* 336 S.C. 8, 518 S.E.2d 278 (1999). Examples of circumstances of aggravation include the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, great disparity between the ages and physical conditions of the parties involved, and the difference in the sexes. *Id.* Other circumstances include indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, and resistance to lawful authority. *Id.* Simple assault and battery, in contrast, is "an unlawful act of violent injury to another unaccompanied by any circumstances of aggravation." *State v. Sprouse,* 325 S.C. 275, 285–86, 478 S.E.2d 871, 877 (Ct.App.1996).

Patterson misconstrues the nature of the circumstances necessary to elevate a simple assault and battery to the crime of ABHAN. "Serious bodily harm to the prosecuting witness is not necessary" to establish an ABHAN. *State v. DeBerry,* 250 S.C. 314, 319, 157 S.E.2d 637, 640 (1967). In

fact, bodily harm is not even a prerequisite to an ABHAN conviction. *Id.* Further, a conviction for ABHAN may be sustained even if no real force was used against the victim. *State v. Green,* 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997).

In ruling on a motion for directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Burdette,* 335 S.C. 34, 515 S.E.2d 525 (1999); *State v. Cooper,* 334 S.C. 540, 514 S.E.2d 584 (1999). If there is any direct evidence or any substantial circumstantial evidence which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced, an appellate court must find the case was properly submitted to the jury. *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999). *See also Burdette, supra* (if the State presents any evidence which reasonably tends to prove defendant's guilt, or from which defendant's guilt could be fairly and logically deduced, the case must go to the jury). On appeal from the denial of a motion for directed verdict, this Court must view the evidence in a light most favorable to the State. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998).

Clearly, there is a difference in the sexes of the victim and defendant in this case. Moreover, there was great disparity between the physical conditions of the parties involved. Simpson was eight and one half months pregnant. Further, the evidence shows one of the men held a gun to the side of Simpson's face. Additionally, Patterson and another man dragged the eight and one half months pregnant Simpson up a flight of stairs on her stomach. Our courts have held much less violent incidents of touching constituted ABHAN. *See State v. Williams,* 257 S.C. 257, 185 S.E.2d 529 (1971) (evidence defendant reached in car window and rubbed neck of female victim supported conviction for ABHAN); *DeBerry,* 250 S.C. at 319, 157 S.E.2d at 640 (holding "a stranger on the street embrac[ing] a young lady" presents all the elements of ABHAN).

The State presented evidence of each element of ABHAN. It is irrelevant that the jury might have disbelieved any portion of the evidence because that involves the weight of the evidence. Viewing the evidence in the light most favorable to

the State, we find the trial court correctly denied Patterson's motion for a directed verdict on the ABHAN charge.

## IV. Lesser Offense of Simple Assault and Battery

 Patterson challenges as error the trial court's refusal to charge the jury on simple assault and battery as a lesser included offense of ABHAN. We disagree.

 Upon indictment for a greater offense, a trial court has subject matter jurisdiction to convict a defendant for any lesser included offense. *See Browning v. State,* 320 S.C. 366, 465 S.E.2d 358 (1995); *State v. Tyndall,* 336 S.C. 8, 518 S.E.2d 278 (1999). A lesser included offense instruction is required only when the evidence warrants such an instruction, and it is not error to refuse to charge the lesser included offense unless there is evidence tending to show the defendant was guilty only of the lesser offense. *Tyndall, supra. See also State v. Sprouse,* 325 S.C. 275, 478 S.E.2d 871 (Ct.App. 1996) (trial judge is required to charge jury on lesser included offense if there is evidence from which it could be inferred defendant committed lesser, rather than greater offense). The trial court should refuse to charge a lesser included offense where there is no evidence the defendant committed the lesser rather than the greater offense. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996); *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994). Due process requires that a lesser included offense be charged when the evidence warrants it but only if the evidence would permit a jury rationally to find the defendant guilty of the lesser offense. *Tyndall, supra.* In order to justify a charge of a lesser included offense, the evidence must be capable of sustaining either the greater or the lesser offense, depending on the jury's view of the facts. *Id.*

In the case *sub judice,* the evidence proves aggravating circumstances necessary to sustain a conviction for ABHAN were present. First, there is a difference in the sexes of the victim and defendant. Second, one of the men held a gun to Simpson's head. Third, Patterson and an accomplice dragged the eight and one half month pregnant Simpson up a flight of stairs on her stomach. There is *no* evidence Patterson committed the lesser offense of simple assault and battery, rather

than ABHAN. The trial court did not err in refusing to charge the jury as to the lesser offense of simple assault and battery.

## V. Requested *Telfaire* Charge

■ Patterson argues the trial court erred in refusing to give his proposed identification charge, which is commonly known as the *Telfaire* instruction. *See United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972).[2] We disagree.

"Article V of the South Carolina Constitution prohibits judges from charging juries in respect to matters of fact." *State v. Robinson*, 274 S.C. 198, 203, 262 S.E.2d 729, 731 (1980). "The trial judge must refrain from intimating 'to the jury his opinion of the case, what weight or credence should be given to the evidence and participating in any manner with the jury's finding of fact.'" *Id.* at 203, 262 S.E.2d at 731 (quoting *State v. Pruitt*, 187 S.C. 58, 64, 196 S.E. 371, 374 (1938)).

The charge Patterson requested is essentially a charge on the facts which is contrary to our constitutional prohibition against charges to the juries on the facts. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."). Furthermore, our Supreme Court specifically rejected the *Telfaire* instruction nearly twenty years ago. *See Robinson, supra* (holding that under the circumstances of the case the trial court was correct to decline the *Telfaire* charge).

In the present case, instead of giving the requested charge, the trial court instructed the jury with a charge containing many of the same points of law as Patterson's requested instruction. We find the charge given was sufficient and proper. Here, as in *State v. Motes*, 264 S.C. 317, 326, 215 S.E.2d 190, 194 (1975), the charge "adequately focused the attention of the jury on the necessity for a finding that the testimony identified [Patterson] as the offender beyond a reasonable doubt; therefore, no prejudice resulted to [Patterson] from the failure to give the requested instruction." We

---

**2.** The *Telfaire* Court was dealing with the "one witness" identification rule. The *Telfaire* model instruction was designed to focus the attention of the jury on the identification issue and minimize the risk of conviction through false or mistaken identification.

find no error in the trial court's refusal to charge Patterson's requested identification instruction.

## *CONCLUSION*

We hold the trial court did not err in failing to grant Patterson's motion for a mistrial. Further, we rule the trial court properly denied Patterson's motion to suppress Simpson's pre-trial identification of him. In addition, we find the trial court did not err in denying Patterson's motion for directed verdict as to the ABHAN charge. Moreover, the trial court correctly refused to charge the jury on simple assault and battery as a lesser included offense of ABHAN. Finally, the trial court did not err in refusing to give the *Telfaire* instruction to the jury. Accordingly, Patterson's convictions for armed robbery, first degree burglary, and ABHAN are

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.