**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Tremaine Rashon Wray, Appellant.

Appellate Case No. 2009-145346

———————————

Appeal From Richland County
J. Michelle Childs, Circuit Court Judge

———————————

Unpublished Opinion No. 2012-UP-477
Heard June 6, 2012 – Filed August 8, 2012

———————————

**AFFIRMED**

———————————

Appellate Defenders Elizabeth Anne Franklin-Best and
Dayne C. Phillips, both of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy
Attorney General John W. McIntosh, Senior Assistant
Deputy Attorney General Salley W. Elliott, Assistant
Attorney General Alphonso Simon, Jr., and Solicitor
Warren B. Giese, all of Columbia, for Respondent.

———————————

**PER CURIAM:** Tremaine Rashon Wray appeals his conviction for murder. We affirm.

The victim was socializing with a group of friends at a club in Columbia. An altercation ensued, prompting the group to depart from the premises. As they hurried to leave, shots were fired from a vehicle toward a car wash stall where their own vehicles were parked. The victim was shot in the leg and pronounced dead shortly after being taken to the hospital.

The owner of the club identified Wray and co-defendant Taurus Watts from photographic lineups as the shooters. He also was acquainted with Wray, had known Watts a long time, and claimed to have seen both at his business establishment on the night of the shooting. In addition, he was able to describe other particulars relevant to the incident, such as the weapon used in the shooting, the vehicle in which Wray and Watts were riding, the direction in which the vehicle was travelling when the victim was shot, and the side of the vehicle whence the shots were fired. The murder weapon was never found, but the information provided by the club owner was consistent with other details discovered by the police. These details included (1) the location of gunshot residue in the vehicle in which Wray and Watts were riding, (2) two projectiles from the car wash stall and one projectile recovered from the victim's clothing, and (3) shell casings found at the crime scene. Wray and Watts were subsequently indicted for murder. Over objections from both defendants, the State successfully moved to have their scheduled trial postponed to investigate a new lead on the location of the murder weapon. They were tried together a few months later. The jury found both defendants guilty, and they filed separate appeals.

1. Wray argues the trial judge should have suppressed the fruits of a search warrant of the vehicle in which he and Watts were seen on the night of the incident because the affidavit supporting the warrant failed to set forth sufficient information to establish probable cause and merely gave conclusory statements by the investigator without identifying any witnesses. We affirm the trial judge's admission of this evidence. *See State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000) (stating the appellate court will affirm the trial judge's ruling on a motion to suppress if the ruling is supported by any evidence and will reverse only if there is "clear error"). The issuing magistrate's task is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in

a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). According to the affidavit, (1) several witnesses saw the vehicle to be searched leaving the crime scene and identified it as the vehicle from which several rounds were fired and (2) a witness identified both the driver and the passenger in the vehicle and stated that the gunfire that struck the victim came from the vehicle at the incident location. None of the witnesses were confidential informants; therefore, evidence of past reliability was not necessary. *See State v. Driggers*, 322 S.C. 506, 510, 473 S.E.2d 57, 59 (Ct. App. 1996). Moreover, law enforcement personnel located the vehicle at the residence of the individual identified by the witness as the driver, thus independently corroborating the witness's account. *See State v. Bellamy*, 336 S.C. 140, 145, 519 S.E.2d 347, 349 (1999) (upholding a finding that a search warrant was based on probable cause even though the informant's reliability was suspect and citing, among other reasons, that weapons described by the informant matched those that had been stolen from the police department just days earlier). Finally, although the affidavit did not include the names of the witnesses, it noted that the witness who identified the occupants of the vehicle had also given a separate statement to law enforcement. *See Gates*, 462 U.S. at 241-42 ("[A]n affidavit relying on hearsay 'is not deemed to be insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.'" (quoting *Jones v. United States*, 362 U.S. 257, 269 (1960))).

2. Wray next complains that the trial judge should have granted his motion for a mistrial because of two inflammatory and leading questions that the solicitor asked a witness for the State. We disagree.

The witness had previously been in a relationship with one of the men socializing with the victim on the night of his death. She was at the club that night. There, she ran into her former boyfriend and was introduced to others in his party. When she went to the bar by herself, an unknown man, whom she knew only as "T-something," made unwanted advances toward her. The witness then proceeded to the dance floor, where her former boyfriend approached her and stood behind her. Shortly thereafter, the man known as "T-something" resumed making advances toward the witness despite her attempt to discourage him, prompting her former boyfriend to throw a drink on him. A fight erupted inside the club, which led to the victim's death and resulted in Wray's conviction. The witness gave a description of "T-something" and testified that he was definitely not Taurus Watts, with whom she was acquainted through family members.

The State called the witness to testify in its case-in-chief. Without objection, the solicitor asked her if she remembered being reluctant to talk with the police when they came to her home to question her about the incident, and the witness answered in the affirmative. The solicitor then asked, "Isn't it true you were scared to talk to them?" Wray objected on the basis that the solicitor was attempting to lead the witness, and the trial judge sustained the objection. Immediately after the trial judge ruled on the objection, the solicitor asked the witness about a statement she made to an investigator about her fear. Although Wray promptly objected again, the witness answered the question in the negative before Wray could elaborate on his objection. The trial judge then instructed the jury to "to disregard both the question and answer in that line of questioning." The witness went on to testify that despite her initial reluctance, she eventually went to the sheriff's department and provided a statement.

The jury was then excused, and Wray moved for a mistrial, arguing the solicitor improperly injected the issue of the witness's fear of retaliation if she discussed the case with law enforcement. He also contended the question was unduly suggestive and resulted in obvious prejudice to him. The trial judge refused to declare a mistrial, noting she had given a curative instruction, but offered to restate the precautionary statement to the jurors. Wray declined the offer.

"The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *State v. Bantan*, 387 S.C. 412, 417, 692 S.E.2d 201, 203 (Ct. App. 2010) (citing *State v. Cooper*, 334 S.C. 540, 551, 514 S.E.2d 584, 590 (1999)). In a criminal case, "[a] mistrial should be granted only when absolutely necessary, and a defendant must show both error and prejudice in order to be entitled to a mistrial." *State v. Wilson*, 389 S.C. 579, 585-86, 698 S.E.2d 862, 865 (Ct. App. 2010). "'The determination of prejudice must be based on the entire record and the result will generally turn on the facts of each case.'" *Id.* at 586, 698 S.E.2d at 865-66 (quoting *State v. White*, 371 S.C. 439, 447, 639 S.E.2d 160, 164 (Ct. App. 2006)).

Here, in ruling on Wray's objection, the trial judge instructed the jury to disregard both the question and the witness's answer. Also, when charging the jury, she directed the jurors to disregard any testimony stricken from the record. Although Wray argued both at trial and on appeal that he was adversely affected by the two questions to which he objected, he offered only conclusory arguments to support his assertion that he was irremediably prejudiced by the questions and resulting

testimony. Moreover, the inflammatory insinuations in the solicitor's questions were not referred to again during the six and one-half days of trial that followed the witness's appearance. Finally, neither the questions at issue nor any answers that the witness gave implicated either defendant in the victim's murder. Considering all these circumstances, we hold the trial judge's remedial measures were sufficient to cure any prejudice from the solicitor's questions; therefore, the case for mistrial presented here was not one of such manifest necessity that warrants reversal of the trial judge's refusal to invoke this drastic measure. *See State v. Patterson*, 337 S.C. 215, 227, 522 S.E.2d 845, 851 (Ct. App. 1999) ("A mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons."); *id.* (stating that a mistrial should not be ordered in every case in which incompetent evidence is received and that "the trial judge should exhaust other methods to cure possible prejudice before aborting a trial").

3. Finally, Wray maintains the circuit judge originally scheduled to preside at the trial erred in granting the State's motion to continue the case to investigate recently obtained information about where the murder weapon could be found. Wray argues the State, in moving for a continuance, failed to comply with Rule 7 of the South Carolina Rules of Criminal Procedure and this error was compounded by the court's excusing the State from compliance with this rule. We disagree.

A trial judge's decision to grant a continuance will not be reversed absent a clear showing of an abuse of discretion. *State v. Galimore*, 396 S.C. 471, 477, 721 S.E.2d 475, 478 (Ct. App. 2012). Here, as required by Rule 7, the State's motion was made in writing and filed with the clerk of court. Rule 7(a), SCRCrimP. The motion also included a showing of good and sufficient legal cause to postpone the trial, namely the existence of newly discovered information that, notwithstanding diligent efforts by law enforcement, could not be fully investigated before the scheduled trial. Furthermore, contrary to Wray's argument at trial, the requirement that the State present testimony to support its motion applies only when the continuance is sought because of the absence of a witness. Rule 7(b), SCRCrimP. In this case, the State requested a continuance to investigate a new lead about the location of the missing murder weapon, not because a witness failed to appear. Based on these circumstances, we hold the grant of the State's motion to continue the case was within the trial judge's discretion.

**AFFIRMED.**

**WILLIAMS, THOMAS, and LOCKEMY, JJ., concur.**