540 S.E.2d 445

**The STATE, Respondent,**

v.

**Lawrence Edward MOORE, Petitioner.**

**The State, Respondent,**

v.

**Terrance Wideman, Petitioner.**

No. 25217.

Supreme Court of South Carolina.

Heard Oct. 17, 2000.

Decided Dec. 11, 2000.

284

Assistant Appellate Defenders Katherine Carruth Link and M. Anne Pearce, of South Carolina Office of Appellate Defense, of Columbia, for petitioners.

Attorney General Charles Molony Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert. E. Bogan, and Senior Assistant Attorney General Charles H. Richardson, of Columbia, and Solicitor W. Townes Jones, of Greenwood, for respondent.

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinions in *State v. Moore,* 334 S.C. 411, 513 S.E.2d

626 (Ct.App.1999) and *State v. Wideman,* Op. No. 99–UP–101 (S.C.Ct.App. filed Feb. 22, 1999).[1]  We affirm in part, reverse in part, and remand for a new trial.

## FACTS

Moore and Wideman were convicted of second degree burglary and grand larceny.  At their joint trial, they challenged the admissibility of the identification given by the robbery victim's neighbor, Stephanie Davis.  At an *in camera* hearing, Davis testified she was driven to her Greenwood apartment by her father at approximately 11:15 am on June 11, 1996.  From approximately 50 yards away, she observed two men coming out of her neighbor Steven Bell's house; Davis knew Bell was at work.  After exiting her father's car, Davis asked the two men what they were doing and both "startled" and ran.  She called 9–1–1 and gave police a description of the men.  Davis described two African–American males, one was taller and darker, "he had on a white hat . . . a white t-shirt and blue shorts . . . the white hat fell off and [she saw] braided hair." The taller man was thinner, and Davis saw only his profile. The other man had on a white t-shirt, either shorts or pants, and a black hat.  Davis could not say whether he was stocky or thin, only that he was the shorter of the two.  She saw him only from the back.[2]

Approximately ninety minutes later, Davis was taken in a police patrol vehicle to an area near Greenwood Supply where two men were being detained by police.  The suspects were the only non-uniformed persons in the vicinity.  When asked if she could identify the men, Davis replied, "Yes, . . . the clothes—it was a hat on the ground and I remembered the black hat, and the clothes were the same."  With respect to the taller man with the braided hair, after Davis had "seen him up close," she identified him for police as "Coochie Terry," a man she recognized as having lived in an apartment near her sister.  On cross-examination, Davis admitted she had not

---

1.  The opinions are virtually identical, with the exception of footnote 2 in *Wideman,* dealing with a preservation issue.

2.  The record does not indicate precisely the distance at which Davis encountered the men.  She was at her mailbox and the men were in her neighbor's back yard.

really seen either man's face at the time of the initial confrontation.

At the close of the *in camera* hearing, the trial court ruled, "[t]he court's finding is that there is evidence—I won't say it's reliable, but I think that's a matter for the jury—that she can identify them. I don't find it unduly suggestive. I find the issues—the weight is a matter for the jury." The Court of Appeals majority reversed and remanded. The court found error in the trial court's failure to make a determination of the reliability of Davis' identification in accordance with the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see also State v. Johnson*, 311 S.C. 132, 427 S.E.2d 718 (Ct.App.1993).[3] Accordingly, the majority remanded to the trial court for a hearing to determine whether Davis' statement was reliable under the totality of the circumstances. Chief Judge Howell dissented, finding Davis' identification unreliable as a matter of law such that a remand was unnecessary.

## ISSUE

Did the Court of Appeals err in remanding to the trial court for a hearing to determine whether the identification in this case was unreliable?

## DISCUSSION

■ A criminal defendant may be deprived of due process of law by an identification procedure which is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (*citing Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)); *State v. Stewart*, 275 S.C. 447, 272 S.E.2d 628 (1980).

---

**3.** Given the paucity of evidence against the defendants, the Court of Appeals concluded the error could not be deemed harmless. 334 S.C. at 416, 513 S.E.2d at 628. There is no challenge to this finding on certiorari.

The United States Supreme Court has developed a two-prong inquiry to determine the admissibility of an out-of-court identification. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Manson v. Brathwaite, supra.* First, "[a] court must first determine whether the identification process was unduly suggestive.... [It] next must determine whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed." *Curtis v. Commonwealth,* 11 Va.App. 28, 396 S.E.2d 386, 388 (1990) (citing *Neil v. Biggers,* 409 U.S. at 198, 93 S.Ct. 375).

> Only if [the procedure] was suggestive need the court consider the second question—whether there was a substantial likelihood of irreparable misidentification. Although one-on-one show-ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure. [The] inquiry, therefore, must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.

*Jefferson v. State,* 206 Ga.App. 544, 425 S.E.2d 915, 918 (1992). *See also State v. Stewart,* 275 S.C. 447, 272 S.E.2d 628 (1980); *State v. Gambrell,* 274 S.C. 587, 266 S.E.2d 78 (1980) (central question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive).

■ Here, in assessing the first-prong, the trial court ruled the show-up procedure was not unduly suggestive. This was error. Single person show-ups are particularly disfavored in the law. *Stovall,* 388 U.S. at 302, 87 S.Ct. 1967 (practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned); *see also State v. Johnson,* 311 S.C. 132, 134, 427 S.E.2d 718, 719 (Ct.App.1993) (single person show-ups are particularly disfavored in the law). Here, the witness was brought to a location where two individuals, wearing clothing similar to that described by the witness, were surrounded by uniformed police officers; it is patent the show-up procedure used was unduly suggestive. *Accord In the Interest of Jamal Rashee A.,* 308 S.C. 392, 418 S.E.2d 326 (Ct.App.1992) (taking

witness to location where suspects, but no other individuals, are being detained is suggestive).[4]

Given our finding that the show-up used in this case was unduly suggestive, we must determine whether a remand is necessary or whether, under the unique facts of this case, the matter of reliability may be determined by this Court. We find a remand unnecessary. We agree with Chief Judge Howell's dissent that, under the facts of this case, the identification is unreliable as a matter of law and therefore a remand would serve no useful purpose.[5]

As noted in Chief Judge Howell's dissent in this case, whether an eyewitness identification is sufficiently reliable is a mixed question of law and fact. *State v. Moore*, 334 S.C. at 418, 513 S.E.2d at 629. In reviewing mixed questions of law and fact, where the evidence supports but one reasonable inference, the question becomes a matter of law for the court. *Clyburn v. Sumter County Sch. Dist.*, 317 S.C. 50, 53, 451 S.E.2d 885, 887–88 (1994). Generally, the decision to admit an eyewitness identification is at the trail judge's discretion and will not be disturbed on appeal absent an abuse of such, or the commission of prejudicial legal error. *State v. Johnson*, 311 S.C. 132, 427 S.E.2d 718 (Ct.App.1993). However, an eyewitness identification which is unreliable because of suggestive line-up procedures is constitutionally inadmissible as a matter of law. *Caver v. Alabama*, 537 F.2d 1333, 1335 (5th Cir.1976), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1183, 51 L.Ed.2d 587 (1977), *citing Foster v. California*, 394 U.S. 440, 442–43, n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

---

4. Although the Court of Appeals majority did not explicitly hold the show-up unduly suggestive, it is implicit from its recitation of authority and subsequent treatment of the reliability issue that it indeed did so. Accordingly, to the extent the majority found the show-up unduly suggestive, its opinion is affirmed.

5. Given that a full hearing has been conducted and a full record exists, a remand for a hearing on the reliability of Davis' identification is unnecessary. *Accord State v. Cash*, 304 S.C. 223, 403 S.E.2d 632 (1991) (remand unnecessary where it is clear remand for hearing would serve no useful purpose). Unlike *State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992), in which no hearing was held to determine the admissibility of a police officer's in-court identification, a full hearing has already been held in this matter.

■ The following factors are to be considered in evaluating the totality of the circumstances as to whether an identification is admissible:

[T]he opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *State v. Stewart,* 275 S.C. at 450, 272 S.E.2d at 629. Only after a determination as to the reliability of a witness' identification has been made by the trial court may the witness testify before the jury. *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999).

■ Reviewing the *Neil v. Biggers* factors, we find the only factor established with any degree of reliability in this case is number 5, the amount of time between the crime and the confrontation, which was between 1½–2 hours. This factor, however, is clearly outweighed by the other factors. As noted by Chief Judge Howell, at the time of the crime, Davis saw the two defendants for only a very brief period of time, at some distance. This is not a case in which the witness had an opportunity to observe the defendant at close proximity for some considerable period of time. *See State v. Gambrell,* 274 S.C. 587, 266 S.E.2d 78 (1980). As to the second factor, Davis' attention was likely not as acute as it might have been had she been the victim of a crime.[6] Third, the degree of accuracy of Davis' description is tenuous, at best. Her descriptions were based primarily on the suspects' clothing and race, and that one was taller than the other. She really did not get a look at either suspect's face, but saw one from the profile. Of further concern is the fact that Davis failed to recognize Wideman at the scene of the crime, notwithstanding she claimed to have seen the side of his face and knew him from her sister's apartment complex. The fact that Davis failed to recognize him until the show-up highlights both the inherent unreliabili-

---

**6.** This Court has noted that the attention of a mere passerby is likely to be less acute than that of a victim. *State v. Ford,* 278 S.C. 384, 386, 296 S.E.2d 866, 867 (1982).

ty of the identification and the completely suggestive nature of the show-up procedure. Further, as to the defendant Moore, Davis gave no physical description of him other than the fact that he was shorter and wore a black hat. She did not recall if he was stocky or thin; she recognized him at the show-up only by virtue of the black hat on the ground beside him. When asked at the show-up if she recognized the suspects, she specifically stated, "Yes, . . . the clothes—it was a hat on the ground and I remembered the black hat, and the clothes were the same." Under the totality of the circumstances here, we find a substantial likelihood of irreparable misidentification such that the identifications are unreliable as a matter of law.[7] Accordingly, a remand to the trial court is both unnecessary and contrary to the interests of judicial economy.

The Court of Appeals' opinion is

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR A NEW TRIAL.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

7. We note that, although Davis' identification is unreliable as a matter of law, she is in no way prevented from testifying as a fact witness on remand, insofar as the events she witnessed are relevant and necessary to establish the state's case.