THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 The State, Respondent,
 
 
 
 
 

v.

 
 
 
 
 Kent Clayton, Appellant.
 
 
 
 
 

Appeal From Pickens County
G. Edward Welmaker, Circuit Court Judge

Unpublished Opinion No. 2011-UP-003
 Submitted September 1, 2010  Filed
January 20, 2011

AFFIRMED

 
 
 
 Appellate Defender Robert M. Pachak, South
 Carolina Commission on Indigent Defense Division of Appellate Defense, of
 Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief
 Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley
 W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Office of
 the Attorney General, of Columbia; Solicitor Robert M. Ariail, of Greenville,
 for Respondent.
 
 
 

PER CURIAM:  Appellant,
 Kent Clayton, was convicted of assault with intent to
 commit criminal sexual conduct in the first degree.  He appeals,
 asserting the trial judge erred in failing to suppress the out-of-court and
 in-court identifications of appellant by the victim, and further erred in admitting
 testimony concerning a number of knives found in appellant's vehicle.[1] 
 We affirm.
FACTUAL/PROCEDURAL BACKGROUND
Victim testified that she
 visited the Upstate Fair in Pickens County on the night of August 30, 2007. 
 Around 11:30 or 12:00 that night, she started to exit the fairground, intending
 to walk to her home only a few blocks away.  She stopped at the front gate and
 spoke with a man named Keith.  Another man was standing there at the time, and
 as Victim began to leave, the other man told her he would walk her out of the
 area.  Victim declined, but the man accompanied her anyway.  As she walked
 through the fair parking lot, the man brandished a fixed-blade knife.  When
 Victim asked him what it was, he put the knife to her throat and threw Victim
 to the ground.  The man pointed the knife at Victim's neck and told her he was
 going to rape her.  Victim began fighting and screaming and momentarily managed
 to escape her attacker.  However, the man caught Victim and threw her back to
 the ground, straddling her and holding the knife to her neck.  Victim continued
 to scream and fight until the man eventually told her he was going to let her
 go.  He took Victim's cell phone so she could not call for help, and told
 Victim he would kill her if she reported the crime.  Victim described the
 lighting in the area of the gate where she exited the area as "pretty lit
 up" and stated she could see "real good."
After the attack, Victim ran
 home, where she told her husband what had occurred.  However, she did not
 contact law enforcement until the following day, September 1, 2007, out of fear
 from the attacker's threat.  Officers interviewed Victim at her home and
 returned later that day to take her to the fairground to see if she could
 identify the person who attacked her.  Victim described her attacker as a being
 white, in his late forties or early fifties, between two hundred and two
 hundred and forty pounds, 6'1" or 6'2" tall, and having blonde hair.
 On the second or third time walking around the fairground, Victim recognized
 someone she believed was her attacker standing at one of the fair games. 
 Victim made an in-court identification of appellant as the person she thought
 had attacked her, but testified she was "not really for sure that that's
 him."  Victim testified the officers asked how sure she was at the time
 she pointed him out at the fairground, and she told them she was not quite
 sure, but was fifty percent sure.  However, when asked on cross-examination
 where the person was that she was "fifty percent sure of" when she
 walked around the fairground, Victim replied that she now remembered he was
 standing at one of the games holding a basketball and that she was "starting
 to remember that it is really him, too now."
The State also presented the
 testimony of Steve Young, a friend and fellow fair worker of appellant.  Young
 testified that the fair opened in Easley on a Thursday, and in the early
 morning hours on Friday appellant approached Young and indicated he needed to
 speak with Young.[2] 
 Appellant then told Young that if anyone asked, appellant was with Young the
 whole night.  Young asked appellant why he asked him to do that, and appellant
 replied that "he half-heartedly tried to rape someone."  Subsequently,
 Young contacted the authorities and informed them of his conversation with
 appellant.  The next day, around noon on Saturday, officers found Young
 at the fairground and asked him about the matter.  Young told them what had
 occurred and directed them to the booth where appellant worked.  When appellant
 was arrested later that day, he gave Young the keys to his van and asked him to
 look after his animals. 
Within a day of his arrest,
 appellant called Young and asked him to come see him.  A day or two later,
 Young contacted the officers and requested he be wired for his visit with
 appellant.  Thereafter, Young visited with appellant while wired, at which time
 Young told appellant he thought all the authorities had was a witness who
 identified appellant.  Appellant responded that was all he knew that the
 authorities had against him, and that it was "his word against hers." 
 He further instructed Young to "go ahead and give the alibi that [the two
 of them were] together the whole night" except for approximately ten
 minutes. Young asked appellant if there was anything the police could get that
 he should take care of, and appellant indicated that he had "disposed of
 everything."  Appellant then told Young the cell phone battery may be in
 the van, though, and he should dispose of that for him.  When asked if there
 was any weapon in the van that was involved, appellant stated that he had
 disposed of it, "but the police took a picture of all his knives."
Detective Kett Fowler
 testified he was apprised of the matter by Deputy Raines, who happened to
 respond to the call of Young as well as the call from Victim.  Detective Fowler
 accompanied Victim during the walk through the fairground.  He testified that
 on the second trip around, Victim identified appellant as a possible suspect. 
 On the third trip around, Victim again indicated appellant might be the
 suspect, stating that he looked similar to her attacker, but noted she was not
 one hundred percent positive.  When asked to scale her certainty, Victim
 responded she was fifty percent sure.  Detective Fowler pointed out appellant
 to Young and asked him if that was the person Young had had the previous
 conversation with that he reported, and Young indicated it was.  Detective Fowler
 then made contact with appellant and took a statement from him, wherein
 appellant claimed he was with Young until 2 a.m. on the night in question, then
 walked his dogs and went to his van to sleep.  The detective obtained appellant's
 consent to search his van.  Over defense counsel's objection, Detective Fowler
 testified the only thing found in the van connected to the Victim's report were
 various knives, mostly folding but some fixed-blades, which were located in a
 footlocker.  The discovered knives were ultimately not tied to this crime. 
 Thereafter, Detective Fowler contacted the magistrate and explained the facts
 and the magistrate issued a warrant for appellant's arrest.
ISSUES
1.  Whether the trial court erred, abused its discretion and violated due
 process of law under the State and Federal Constitutions when it failed to
 suppress out-of-court and in-court identifications of appellant when the only
 witness to the incident could only say there was a fifty percent chance
 appellant was her attacker.
2. Whether the trial court erred in admitting into evidence testimony about
 a number of knives found in appellant's trunk that were not connected to the
 crime, were prejudicial, and raised spurious instances of prior bad acts.  
STANDARD OF REVIEW
The admission or exclusion of
 evidence is left to the sound discretion of the trial court, and the court's
 decision will not be reversed absent an abuse of discretion.  State v.
 Morris, 376 S.C. 189, 205-06, 656 S.E.2d 359, 368 (2008).  An abuse of
 discretion occurs when the trial court's decision is based on an error of law
 or on factual findings that are without evidentiary support.  Id. at
 206, 656 S.E.2d at 368.  Further, for an error of law to warrant reversal based
 upon the admission or exclusion of evidence, the appellant must prove both the
 error of the ruling and the resulting prejudice, i.e., that there is a
 reasonable probability the verdict was influenced by the challenged evidence or
 the lack thereof.  State v. Gault, 375 S.C. 570, 574, 654 S.E.2d 98, 100
 (Ct. App. 2007).
LAW/ANALYSIS
I.  Identification
On appeal, appellant argues the trial court erred in
 allowing Victim's out-of-court and in-court identification testimony.  Noting
 that "reliability is the linchpin in determining the admissibility of
 identification evidence," appellant contends Victim's failure to make a
 positive identification was not relevant, and that a show-up identification
 procedure with only a tentative identification violates due process.   We disagree.
Prior to trial, a suppression hearing was held regarding
 Victim's pre-trial identification of appellant.  Victim testified about how she
 observed the assailant for ten to fifteen minutes before she left the
 fairground's gate, and further testified to how the attack occurred, noting the
 assailant straddled her during that time and their faces were "pretty
 close."  Victim additionally described her assailant, stating he was a
 white man in his late forties or early fifties, was a little taller than her 6'1"
 husband, he weighed "two something,"   and he wore a fair uniform
 shirt.  Victim stated that the next day, or the day after, she accompanied
 officers to the fairground with two hundred or more people in the area, and she
 observed a man on her second or third walk around that looked like her
 attacker. She pointed the man out to the officers and told them she was fifty
 percent sure, but she wasn't really positive.  Victim further pointed out the
 appellant in the hearing and stated, "He resembles the guy sitting over at
 [the defense] table."  Victim clarified that she saw the person twice in
 her walks around the fairground, and that she was "pretty sure it was him." 
 Detective Fowler testified during the suppression hearing that he knew where
 appellant was prior to walking around with Victim, but there was no suggestive
 conversation between him and Victim and he said nothing to suggest Victim should
 look over at appellant.  
Defense counsel argued any in-court identification of
 appellant by Victim should be suppressed based upon the fact that Victim was
 only fifty percent sure of her identification.  Additionally, counsel argued
 the identification procedure was suggestive because the Victim walked around
 the area three times with law enforcement and Detective Fowler could have
 knowingly or unknowingly communicated his identity as the suspect to Victim. 
 The trial judge found the walk-through was not suggestive and the reliability
 of the identification was a question for the jury.  Defense counsel maintained,
 while the State could elicit testimony from Victim regarding what she stated at
 the fairground regarding appellant, she should not be allowed to make an in-court
 identification of appellant or state appellant resembled her attacker.  The
 trial judge ruled the threshold for Biggers[3] had been met and the matter went to weight and not admissibility of the
 evidence.  During Victim's testimony before the jury, defense counsel made a
 continuing objection to testimony concerning her identification of her
 attacker.
The decision to admit an eyewitness identification is generally
 within the trial judge's discretion, whose decision will not be disturbed on
 appeal absent an abuse of such, or the commission of prejudicial legal error.  State
 v. McCord, 349 S.C. 477, 481, 562 S.E.2d 689, 691 (Ct. App. 2002).  A
 criminal defendant may be deprived of due process of law by an identification
 procedure which is unnecessarily suggestive and conducive to irreparable
 mistaken identification.  State v. Turner, 373 S.C. 121, 127, 644 S.E.2d
 693, 696 (2007).  Thus, an in-court identification of an accused is
 inadmissible if a suggestive out-of-court identification procedure created a
 very substantial likelihood of irreparable misidentification.  Id.  The
 United States Supreme Court has developed a two-prong inquiry to determine the
 admissibility of an out-of-court identification.  State v. Traylor, 360
 S.C. 74, 81, 600 S.E.2d 523, 526 (2004) (citing Neil v. Biggers, 409
 U.S. 188 (1972)).  First, the court must determine whether the identification
 process was unduly suggestive. Next, it must determine whether the out-of-court
 identification was nevertheless so reliable that no substantial likelihood of
 misidentification existed.  State v. Moore, 343 S.C. 282, 287, 540
 S.E.2d 445, 447 (2000).  Only if the procedure was suggestive need the court
 consider whether there was a substantial likelihood of irreparable
 misidentification.  Id. at 287, 540 S.E.2d at 447-48.              
We find no error in the
 admission of Victim's identification of appellant.[4] 
 There is no evidence the identification procedure in the case at hand was in
 any way suggestive.  As noted by the State, Victim was not taken to a standard
 show-up where individual suspects are presented to a victim.  Rather,
 accompanied by law enforcement, Victim merely walked the fairground during
 operating hours with over two hundred people in the area and pointed out the
 person she believed might be her attacker.  Additionally, there is no evidence
 law enforcement suggested, either knowingly or unknowingly, that appellant was
 the suspect.  Because the procedure was not suggestive, we need not consider
 whether there was a substantial likelihood of irreparable misidentification.  We
 further note, although the level of certainty demonstrated by Victim at the
 confrontation is troubling, such is simply a factor for consideration in
 whether there was a substantial likelihood of irreparable misidentification,
 and that factor alone is insufficient to require suppression, for the key issue
 is whether under the totality of the circumstances the identification is
 reliable even though a confrontation may have been suggestive.  See State
 v. Washington, 323 S.C. 106, 111-12, 473 S.E.2d 479, 481-82 (Ct. App. 1996)
 (wherein this court, in analyzing the factors in determining whether there was
 a likelihood of misidentification, noted that an identification is not
 unreliable simply because it may be phrased in uncertain terms, and held identification
 was not unreliable where the jury had the opportunity to observe the witness
 and attach the credibility it deemed proper to his testimony, including the
 certainty or uncertainty of his identification).
II.  Testimony regarding
 knives
Appellant asserts on appeal
 that the trial judge erred in admitting testimony about the knives found in his
 trunk into evidence as they were not connected to the crime, the evidence was
 prejudicial, and it "raised spurious instances of prior bad acts." 
 He argues, pursuant to State v. McConnell, 290 S.C. 278, 350 S.E.2d 179
 (1986), the evidence concerning the knives was inadmissible.
During direct examination of
 Detective Fowler, the solicitor asked what, if anything, was found in the
 consensual search of appellant's van.  The following colloquy then occurred:

 A:  The
 only thing we found that had been mentioned as far as the report and all, there
 was a footlocker that had numerous knives - - -
 [Defense
 Counsel]:  Your Honor, I'm gonna object to that.
 [The
 Court]:  Your objection?
 [Defense
 Counsel]:  Unless they can show some nexus between what they are now talking
 about and this crime it is not relevant.

At this point a bench
 conference was held, and the trial judge overruled counsel's objection. 
 Thereafter, Detective Fowler testified they found numerous knives in the
 footlocker, mostly folding but some fixed-blade knives, but they ultimately
 were not able to tie any of the knives found there to the crime.
Assuming arguendo that the
 evidence was improperly admitted, we find any error to be harmless in light of the
 unobjected to testimony of Steve Young, as well as the minimal impact of
 Detective Fowler's testimony considering the record as a whole.  During direct
 examination, Young recounted his conversation with appellant while appellant
 was jailed.  Young stated he and appellant talked about "a cell phone
 battery and a knife." When Young asked appellant if there was anything he
 needed to take care of for him before the police could find it in the van, and
 if there was any weapon in there "that was involved in it," appellant
 told him there was not, that he had disposed of it, "but the police took a
 picture of all his knives."  Accordingly, there is cumulative, unobjected
 to evidence concerning the knives, and any error in the admission of Detective
 Fowler's testimony regarding the knives is harmless.  See State v.
 Holder, 382 S.C. 278, 289, 676 S.E.2d 690, 696-97 (2009) (holding the
 erroneous admission of evidence is harmless beyond a reasonable doubt where it
 is minimal in the context of the entire record and cumulative to other
 testimony admitted without objection); State v. Blackburn, 271 S.C. 324,
 329, 247 S.E.2d 334, 337 (1978)  (the admission of improper evidence is deemed
 harmless if it is merely cumulative to other evidence); State v. Page,
 378 S.C. 476, 483-84, 663 S.E.2d 357, 360 (Ct. App. 2008) (holding error is
 harmless where it could not reasonably have affected the trial's outcome;  no
 definite rule of law governs the finding that an error was harmless,  rather
 the materiality and prejudicial character of the error must be determined from
 its relationship to the entire case; in considering whether error is harmless,
 a case's particular facts must be considered along with various factors
 including:  the importance of the witness's testimony in the prosecution's
 case, whether the testimony was cumulative, the presence or absence of evidence
 corroborating or contradicting the testimony of the witness on material points,
 the extent of cross-examination otherwise permitted, and the overall strength
 of the prosecution's case).
For the foregoing reasons, appellant's conviction is
AFFIRMED.
FEW, C.J., and HUFF and GEATHERS, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] In a statement given to police on September 1,
 2007, Young indicated this conversation took place around 4:30 or 5:00 a.m.
[3] Neil v. Biggers, 409 U.S. 188, (1972).
[4] Although appellant asserts in his question on
 appeal that the trial judge improperly admitted both the out-of-court and
 in-court identification of him, trial counsel clearly argued only that any
 in-court identification should be suppressed, specifically asserting the State
 could elicit testimony from Victim regarding what she stated at the fairground.