715 S.E.2d 650

**The STATE, Respondent,**

v.

**Randolph FRAZIER, Appellant.**

**No. 4818.**

Court of Appeals of South Carolina.

Heard Jan. 11, 2011.

Decided April 13, 2011.

Withdrawn, Substituted and Refiled June 10, 2011.

Rehearing Denied June 10, 2011.

214

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Mark R. Farthing, all of Columbia, and Solicitor Douglas A. Barfield, Jr., of Lancaster, for Respondent.

LOCKEMY, J.

Randolph Frazier was convicted of first-degree burglary and sentenced to life in prison. On appeal, Frazier argues the trial court erred in (1) denying his motion to suppress, (2) allowing the victim and two neighbors to identify him in court, and (3) denying his motion for a mistrial based upon Rule 5, SCRCrimP, and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We affirm.

## FACTS

On February 5, 2008, Sherika Sanders entered her apartment on Eula Street in Lancaster, South Carolina. Sanders noticed her back door was open and the blinds in the window adjacent to the door were askew. As Sanders looked around the first floor, she heard someone quickly descending the stairs from the second floor. Sanders watched to see who was descending the stairs and observed a man with gray hair and wearing a leather coat turn, look at her, and flee out the front door. Sanders fled out the back door and called for help. Patricia Cauthen, a neighbor, heard Sanders screaming, and shortly thereafter, observed a man she knew as Randolph Frazier peer in her apartment through her glass storm door

and then flee. Another neighbor, Jerry Franklin Strain, also observed a black man with gray hair wearing a black jacket and black shoes run by his apartment.

Approximately a block from Sanders's apartment, Officer Susan Hunter was traveling along Chesterfield Avenue in an unmarked police car. Hunter observed a man walking from the Chesterfield Villas apartment complex, adjacent to the Eula Street apartments, and cross Chesterfield Avenue. Hunter thought the man looked similar to an individual who was the subject of an ongoing investigation. After passing the man, Hunter turned around and drove past the man a second time, but was unable to make an identification. Hunter turned onto a secondary street and proceeded around the 1200 block of Chesterfield Avenue. Before emerging onto Chester-field Avenue again, Hunter received a radio dispatch regarding a burglary at the Eula Street apartments and indicating the suspect was a black male with gray hair wearing a brown jacket. Hunter responded to the radio dispatch indicating she located a subject matching the description walking west on Chesterfield Avenue. Officer John Poovey heard the radio dispatch and Hunter's radio call and responded to the scene in a marked patrol car. As Poovey approached the scene, he observed Frazier walking "in a brisk manner" along Chester-field Avenue.

Poovey and Hunter approached Frazier in their patrol cars at the same time, but from opposite directions. As Poovey approached Frazier, he observed him remove a dark object from his pocket or coat and throw it on the ground near a telephone pole. As Hunter approached Frazier, she also observed Frazier remove a dark object from his pocket, but lost sight of the object as Frazier passed behind a telephone pole. Poovey notified Hunter of his observation over the radio, exited his vehicle, and accosted Frazier. Poovey asked Frazier his name, where he was going, and where he was coming from. After establishing Frazier's identity, Poovey placed Frazier in handcuffs. Poovey also noticed Frazier was "sweating profusely." While Poovey talked with Frazier, Hunter searched the area around the telephone pole and discovered a black bag containing jewelry. As Frazier was being detained, Officer Pat Parsons arrived at the scene.

Parsons took the jewelry bag to Sanders's apartment, and Sanders identified the jewelry as hers.

The police then conducted three "show-ups." An officer drove Sanders to the location where Frazier was detained, and Sanders identified Frazier as the man she observed in her apartment. Officer Kristin Grant drove Cauthen to the location where Frazier was detained. Grant stopped her vehicle at a stop sign on the opposite side of the street from Frazier, and Cauthen identified Frazier as the man who peered in her apartment after she heard Sanders scream. Finally, an officer drove Strain by Frazier. Strain recognized Frazier was wearing shoes and a jacket similar to those worn by the man he observed run past his apartment.

Frazier was indicted for first-degree burglary. At trial, Frazier moved to suppress the identifications. After a *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), hearing, the trial court found the show-ups conducted by the police were not unduly suggestive and noted even if the show-ups were unduly suggestive they were nevertheless reliable. Ultimately, the jury found Frazier guilty of first-degree burglary, and the trial court sentenced him to life in prison.[1] This appeal followed.

## ISSUES ON APPEAL

1.  Did the trial court err in denying Frazier's motion to suppress?
2.  Did the trial court err in allowing Sanders and two neighbors to make an in-court identification of Frazier?
3.  Did the trial court err in denying Frazier's motion for a mistrial based upon Rule 5(a)(1)(C), SCRCrimP, and *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)?

## STANDARD OF REVIEW

■ "In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "This [c]ourt is bound by the trial

---

1. Frazier has an extensive criminal record of property crimes dating back to 1973.

court's factual findings unless they are clearly erroneous." *Id.* "The trial [court's] factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed for clear error." *Id.* at 48–49, 625 S.E.2d at 220.

## LAW/ANALYSIS

### I. Motion to Suppress

■ Frazier argues the trial court erred in denying his motion to suppress the evidence emanating from his detention. Specifically, Frazier contends any evidence gathered was inadmissible because Hunter and Poovey lacked reasonable and articulable suspicion for the initial stop. We disagree.

■ The State concedes Frazier's stop was more than an investigatory detention. Thus, the pertinent analysis is not whether the police had reasonable suspicion to stop Frazier and whether a subsequent on-the-scene warrantless seizure was reasonable. *See State v. Rodriquez,* 323 S.C. 484, 493, 476 S.E.2d 161, 166 (Ct.App.1996) (outlining and applying seven factors for determining whether a warrantless seizure was reasonable). Rather we must determine whether the police had probable cause to arrest Frazier. "The fundamental question in determining the lawfulness of an arrest is whether probable cause existed to make the arrest." *State v. Baccus,* 367 S.C. 41, 49, 625 S.E.2d 216, 220 (2006). "Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested." *Id.* "Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officer's disposal." *Id.*

Based on a totality of the circumstances, we find Hunter and Poovey had probable cause to believe Frazier committed a burglary. At the time Frazier was arrested, Hunter and Poovey knew Frazier matched the general description of the subject suspected of burglarizing Sanders's apartment. Hunter observed Frazier leaving the area around the Chesterfield Villas adjacent to, and less than a block from, where the burglary occurred. Poovey observed Frazier walking "in a brisk manner" and noticed Frazier was "sweating profusely" when he approached him. Both Hunter and Poovey observed

Frazier discard a black bag shortly before they approached him. While Poovey accosted Frazier, Hunter found the black bag and determined it contained jewelry. Finally, Frazier was a person of interest in another burglary and a known individual to Hunter and Poovey. We conclude the circumstances within Hunter's and Poovey's knowledge were sufficient to lead a reasonable person to believe Frazier committed a burglary.

■ Finally, even if the seizure was unlawful, the black bag was discovered as a result of Hunter's and Poovey's observations not the illegal arrest. Thus, the exclusionary rule does not provide a remedy. *See State v. Brown*, 389 S.C. 473, 483, 698 S.E.2d 811, 816 (Ct.App.2010) ("The exclusionary rule provides that evidence obtained as a result of an illegal search must be excluded."). Accordingly, the trial court properly denied Frazier's motion to suppress.

## II. In-court Identifications

Frazier argues the trial court erred in allowing Sanders and two neighbors to identify him in-court because their identifications were based upon impermissibly suggestive show-ups. We disagree.

■ "An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." *State v. Moore*, 343 S.C. 282, 286, 540 S.E.2d 445, 447 (2000). Thus, this court must determine whether the out-of-court identification process was unduly suggestive, and if so whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification occurred. *Id.* at 287, 540 S.E.2d at 447.

■ Single person show-ups are disfavored in the law and are suggestive. *Id.* at 287, 540 S.E.2d at 448. Because the out-of-court identification procedure used here was unduly suggestive, we must determine whether it was nevertheless so reliable that no substantial likelihood of misidentification occurred. Reliability is determined by examining the totality of the circumstances in light of the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the

level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Moore,* 343 S.C. at 289, 540 S.E.2d at 448–49. Here, the police conducted show-ups for Sanders, Cauthen, and Strain. Each is discussed in turn.

First, Sanders was able to observe Frazier face-to-face from a distance of ten feet as he descended the stairs in her apartment. Sanders explained Frazier "looked at me and I looked at him" before he fled. Nothing in Sanders's testimony indicates any distractions during her opportunity to view Frazier. Although Sanders's description of Frazier's jacket was incorrect, she demonstrated a high degree of certainty in her identification during the show-up. Finally, Sanders testified fifteen to twenty minutes elapsed between her opportunity to view Frazier and the show-up. Based on the totality of the circumstances, especially considering the short length of time between the burglary and the show-up, Sanders's out-of-court identification was sufficiently reliable such that no substantial likelihood of misidentification occurred.

Second, Cauthen observed Frazier's face shortly after the burglary as he peered into her apartment through her glass storm door. Even though Cauthen had just begun to eat at the time she observed Frazier, her testimony does not reveal any other distraction during her opportunity to view Frazier. Cauthen did not provide a description of Frazier's physical appearance, but testified she knew Frazier and recognized his face when he peered through her glass storm door. Cauthen also exhibited a very high degree of certainty in her identification of Frazier at the show-up. Grant explained the length of time between the burglary and Cauthen's identification of Frazier was approximately fifteen minutes. Placing particular weight on Cauthen's acquaintance with Frazier, an analysis of the totality of the circumstances reveals her out-of-court identification was sufficiently reliable such that no substantial likelihood of misidentification occurred.

Finally, Frazier's argument Strain's in-court identification was tainted by an impermissibly suggestive show-up is manifestly without merit. Although the police conducted a show-up with Strain, he was unable to identify Frazier at the show-up and did not identify Frazier in court. Accordingly, we

decline to consider this argument. Rule 220(b)(2), SCACR ("The Court of Appeals need not address a point which is manifestly without merit.").

Based on the forgoing, the trial court's determination the show-ups were not unduly suggestive was error. However, the trial court's finding the identifications by Sanders and Cauthen were nevertheless admissible was proper because they were sufficiently reliable such that no substantial likelihood of misidentification occurred. Accordingly, the trial court properly denied Frazier's motion to suppress the in-court identifications.

### III. Motion for a Mistrial

Frazier argues the trial court erred in denying his motion for a mistrial because the State failed to disclose Diedre Sturdivant was unable to identify him from a photographic lineup as the person she saw the day of the burglary. We disagree.

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court. *State v. Wasson*, 299 S.C. 508, 510, 386 S.E.2d 255, 256 (1989). The trial court's decision to deny a motion for mistrial will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *Id.* A mistrial should not be granted unless absolutely necessary, and in order to receive a mistrial the defendant must show error and resulting prejudice. *State v. Council*, 335 S.C. 1, 13, 515 S.E.2d 508, 514 (1999).

Generally, the State has a duty to disclose evidence that is favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); Rule 5, SCRCrimP. A defendant asserting a *Brady* violation must demonstrate the evidence the State failed to disclose was (1) favorable to the defendant, (2) in possession of or known to the State, (3) suppressed by the State, and (4) material to guilt or punishment. *Gibson v. State*, 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

Here, the State proffered the testimony of Sturdivant, who explained that on the day of the burglary she observed a man with gray hair and wearing a leather coat run from the Eula Street apartments shortly before she heard a women scream. According to Sturdivant, later that day the police showed her a photographic line-up, but she was unable to identify the man in the leather coat. Frazier elicited the same testimony on cross-examination. Here, there is no prejudice to be remedied by a mistrial because both the State and Frazier elicited the favorable testimony from Sturdivant. *See State v. Beckham,* 334 S.C. 302, 310, 513 S.E.2d 606, 610 (1999) ("The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way."). Accordingly, the trial court properly denied Frazier's motion for a mistrial.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HUFF, J. and GOOLSBY, A.J., concur.