Justice KITTREDGE.
We granted a writ of certiorari to review the denial of Clarence Gibbs’s (Petitioner) second application for post-conviction relief (PCR). We hear this matter pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d 395 (1991), for PCR counsel failed to seek certiorari review following the denial of Petitioner’s first PCR application. After being convicted by a jury of kidnapping, armed robbery, and possession of a deadly weapon during the commission of a violent crime, and unsuccessfully pursuing a direct appeal, Petitioner sought PCR on two grounds: (1) trial counsel was ineffective for failing to contemporaneously object to the introduction of a lineup, a show-up, and in-court identifications; and (2) trial counsel was ineffective in failing to request a jury instruction on the law of alibi as part of the defense strategy. We affirm.
I.
On the evening of April 10, 2005, a robbery occurred at a grocery store in Georgetown, South Carolina. The police arrived to the scene shortly after the robber fled. Three *488 different witnesses were interviewed about the incident. One witness, John Fowlkes, described the robber as a middle-aged or older black man with a “scruffy beard with distinct gray colorings in it.” He also noted the robber wore a black hat and blue jacket. Another witness, Greg Morton, indicated the robber was wearing a black hat and a blue or black jacket. Eric Sessions, the third witness, informed police the robber was wearing a blue hat and a blue jacket. Officers also reviewed a surveillance tape that captured the robbery, and a black jacket found at Petitioner’s home was positively identified by all three witnesses as the jacket worn by the robber.
Approximately ten days after the robbery, police officers presented two photographic lineups, each containing six pictures of people generally matching the description given by the witnesses, to each witness individually.[1] The first photographic lineup contained a picture of Petitioner. Upon viewing the lineups, Fowlkes and Morton identified Petitioner as the robber. Sessions, however, was unable to identify the perpetrator via the lineups.
Nearly one week later, Petitioner was transported to the police station for questioning. The three witnesses were brought to the station to view Petitioner. According to Fowlkes, he was taken to a one-way mirror to determine whether Petitioner had any involvement in the robbery. Fowlkes testified he saw a white male and Petitioner behind the glass and that he instantly recognized Petitioner as the robber. Likewise, Morton testified Petitioner was in the room with two police officers and was able to identify Petitioner as the robber. When Sessions viewed Petitioner, however, he informed police he was sure Petitioner was not the perpetrator.[2]
*489 Petitioner was subsequently charged with Mdnapping, armed robbery, and possession of a deadly weapon during the commission of a violent crime.
Petitioner moved to suppress the evidence related to the photographic lineup, show-up, and any potential in-court identifications. Following a pretrial in camera hearing pursuant to Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the trial court denied Petitioner’s motion to suppress. The trial court found the photographic lineup and show-up identifications were not unduly suggestive and permitted the witnesses to make in-court identifications at trial.
At trial, both Fowlkes and Morton identified Petitioner as the robber.[3] Fowlkes’s photographic lineup identification, show-up identification, and in-court identification were admitted into evidence without contemporaneous objection by the defense.[4] When the State sought to introduce Morton’s photographic lineup identification into evidence, defense counsel raised a contemporaneous objection.[5] However, defense counsel did not object to the introduction of Morton’s show-up or in-court identifications.[6]
Following the State’s case-in-chief, Petitioner presented an alibi defense. Specifically, Petitioner testified he was at home with his mother and girlfriend watching television at the time the robbery occurred. Petitioner’s mother and girlfriend corroborated his story. Both testified they were home with Petitioner on the night of the robbery watching the television show JAG between 9:00 and 10:00 p.m. The State presented *490 two rebuttal witnesses who testified that the only two stations available to Petitioner did not air JAG on the night of the robbery.[7]
During closing arguments, both defense counsel and the State presented arguments to the jury regarding Petitioner’s alibi. The trial court held a charge conference outside the presence of the jury. Defense counsel did not request a jury instruction on the law of alibi testimony. In its charge, the trial court provided instructions to the jury on the burden of proof in criminal cases and reasonable doubt and informed the jury they should consider only competent evidence and determine the credibility of the witnesses. Additionally, the trial court instructed the jury on identification and that the State had the burden of proving identity beyond a reasonable doubt.[8]
Petitioner was convicted by the jury on all three counts and sentenced to concurrent terms of twenty years’ imprisonment for the armed robbery and the kidnapping, and five years’ imprisonment to run consecutively for the possession of a firearm during commission of a violent crime. On direct appeal, the court of appeals affirmed Petitioner’s conviction and sentence. State v. Gibbs, Mem. Op. No. 2007-UP-333 (S.C. Ct.App. filed June 27, 2007).
Subsequently, Petitioner filed two applications for PCR, which were consolidated into one action. In seeking relief, Petitioner alleged defense counsel was ineffective for failing to contemporaneously object to the introduction of the photographic lineup, show-up, and in-court identifications and for failing to request an alibi charge.
At the PCR hearing, defense counsel testified he believed Petitioner’s best defense was to challenge the witnesses’ incon *491 sistent identifications but admitted he should have objected to the introduction of the identification evidence and preserved the issue for appellate review. However, he assumed the identifications would be admitted, and he was solely concerned with rebutting the identifications. Counsel also testified that he did not request the jury instruction on the law of alibi because he believed the identification issues was the stronger defense strategy. He nonetheless acknowledged that he should have requested an alibi charge.
The PCR court found defense counsel was deficient for failing to contemporaneously object to the introduction of the photographic lineup, show-up, and in-court identifications because counsel’s mistake foreclosed review of the issues on appeal. However, the PCR court found Petitioner was not prejudiced by counsel’s deficiency because the trial court admitted the identifications after conducting a thorough Neil v. Biggers hearing.
Regarding the alibi charge, the PCR court found defense counsel’s performance was deficient because he failed to ensure that an alibi instruction was given to the jury. However, the PCR court found that Petitioner had not proven prejudice because the jury charge given “was sufficient to inform the jury that the State had to prove beyond a reasonable doubt that [Petitioner] was not at home at the time of the of the crime, and that he was, in fact, at the scene of the crime.” [9] Thus, the PCR court denied Petitioner relief. No appeal was taken.
Following his initial PCR application and hearing, Petitioner filed a subsequent PCR application. Petitioner alleged his PCR counsel failed to file a notice of intent to appeal the denial of relief in his first PCR. The State filed an amended return requesting a hearing pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d 395 (1991). After an evidentiary hearing, the PCR court found Petitioner was entitled to belated review of the denial of his first PCR application. Thereafter, Petitioner filed an Austin petition for writ of certiorari from the *492 first PCR court’s order denying him relief. This Court granted the petition for writ of certiorari as to the order granting a belated appeal and from the order denying Petitioner PCR pursuant to Rule 243, SCACR.
II.
To establish a claim for ineffective assistance of counsel, “the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel’s deficient performance prejudiced the applicant’s case.” Speaks v. State, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). An applicant may demonstrate prejudice by establishing, by a reasonable probability that, “but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Edwards v. State, 392 S.C. 449, 459, 710 S.E.2d 60, 66 (2011) (citation omitted).
In reviewing the findings of the PCR court, this Court applies an “any evidence” standard of review. Cherry v. State, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). The “PCR court’s ruling should be upheld if it is supported by any evidence of probative value in the record.” Speaks, 377 S.C. at 399, 660 S.E.2d at 514 (citing Cherry, 300 S.C. at 119, 386 S.E.2d at 626).
III.
With respect to both issues on appeal, the PCR court found trial counsel was deficient, but that Petitioner was not prejudiced by his counsel’s deficient performance. We hold these findings are amply supported by the evidence. We address each in turn.
A.
Petitioner contends the PCR court erred in finding he was not prejudiced by counsel’s failure to contemporaneously *493 object to the introduction of the photographic lineup, show-up, and in-court identifications. We disagree.[10]
The purpose of an in camera hearing when the State offers identification witnesses- is for the trial court to decide “whether the in-court identification was of independent origin or was the tainted product of the circumstances surrounding the prior, out-of-court identification.” Id. (citing State v. Ramsey, 345 S.C. 607, 613, 550 S.E.2d 294, 297 (2001)). When analyzing the admissibility of an out-of-court identification, courts utilize a two-pronged analysis. State v. Moore, 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000). First, a court must determine “whether the identification process was unduly suggestive.” Id. (quoting Curtis v. Commonwealth, 11 Va. App. 28, 396 S.E.2d 386, 388 (1990)). Second, a court must determine “whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed.” Id.
After conducting a thorough in camera Neil v. Biggers hearing, the trial court determined the identification procedures utilized by the police, specifically the photographic lineup and the suggestive show-up, were not unduly suggestive.
We find support for the PCR court’s determination that the trial court did not abuse its discretion in finding the photographic lineup identifications were reliable, as there was not a substantial likelihood of misidentification. See Moore, 343 S.C. at 286, 540 S.E.2d at 447. Moreover, we concur with the assessment that the failure of one witness to positively identify Petitioner as the robber does not require a contrary result, as the credibility of the witnesses was thoroughly vetted and put to the jury. See, e.g., Melton v. Williams, 281 S.C. 182, 186, 314 S.E.2d 612, 614-15 (Ct.App.1984) (citations omitted) (“Assessment of the credibility of witnesses is a question for the jury, not the court, and it is the jury that decides the weight to be afforded the testimony.”).
*494 As to the show-up identifications, Petitioner argues that the trial court erroneously admitted these identifications and trial counsel’s failure to object was prejudicial. In general, “one-on-one show-ups have been sharply criticized, and are inherently suggestive.” Moore, 348 S.C. at 287, 540 S.E.2d at 448 (quoting Jefferson v. State, 206 Ga.App. 544, 425 S.E.2d 915, 918 (1992)). Nevertheless, there is no bright line rule concerning show-ups, as the ultimate decision is controlled by the particular facts and circumstances. For example, courts have deemed a show-up procedure proper “where it occurs shortly after the alleged crime, near the scene of the crime, as the witness’ memory is still fresh, and the suspect has not had time to alter his looks or dispose of evidence, and the showup may expedite the release of innocent suspects, and enable the police to determine whether to continue searching.” State v. Mansfield, 343 S.C. 66, 78, 538 S.E.2d 257, 263 (Ct.App.2000) (quoting 22A C.J.S. Criminal Law § 803). “The closer in time and place to the scene of the crime, the less objectionable is a show-up.” Id.
Thus, the inquiry turns upon “whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.” State v. Moore, 343 S.C. at 287, 540 S.E.2d at 448 (quoting Jefferson v. State, 425 S.E.2d at 918). In other words, “[s]uggestiveness alone does not mandate the exclusion of evidence.” Mansfield, 343 S.C. at 78, 538 S.E.2d at 263 (citations omitted). Instead, “[r]eliability is the linchpin in determining the admissibility of identification testimony.” Id. (citations omitted); see also State v. Moore, 343 S.C. at 287, 540 S.E.2d at 448 (“[T]he identification need not be excluded as long as under all the circumstances the identification was reliable notwithstanding any suggestive procedure.” (quoting Jefferson v. State, 425 S.E.2d at 918)).
While the show-up procedures used here were unduly suggestive, the finding of the PCR court that the identifications were reliable under the circumstances is supported by the evidence. Because the two witnesses previously identified Petitioner as the robber from the photographic lineup, the subsequent show-up may be characterized as merely confirmatory and therefore reliable, despite the suggestive procedure. See Moore, 343 S.C. at 287, 540 S.E.2d at 448-49 (“Although *495 one-on-one show-ups have been sharply criticized, and are inherently suggestive, the identification need not be excluded as long as under the [the totality of the] circumstances the identification was reliable notwithstanding any suggestive procedure.”).
In sum, the failure of trial counsel to contemporaneously object to the identification testimony did not result in any prejudice to Petitioner. The probative evidence in the record supports the PCR court’s finding that the trial court did not abuse its discretion in admitting the evidence because the identifications were not so unduly suggestive as to create a likelihood of misidentification. Thus, a contemporaneous objection by trial counsel would not have changed the outcome of Petitioner’s case on appeal.
B.
Petitioner also contends the PCR court erred in finding Petitioner was not prejudiced by his counsel’s deficient performance in failing to request a jury charge on alibi. We disagree.
In evaluating whether a PCR applicant has suffered prejudice as a result of a jury charge, the jury charge must be viewed “in its entirety and not in isolation.” Battle v. State, 382 S.C. 197, 203, 675 S.E.2d 736, 739 (2009).
At trial, Petitioner asserted an alibi defense, but defense counsel failed to request an alibi instruction. The PCR court determined that trial counsel’s failure to request an alibi instruction constituted deficient representation, but Petitioner “has not proven that he suffered prejudice from the lack of an alibi charge.” The PCR court relied on the jury charge as a whole to support its finding of no prejudice.
The relevant portion of the jury charge was:
Now, at issue in this case is the identification of the Defendant as the person who committed the crimes charged. The State has the burden of proving identity beyond a reasonable doubt. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Defendant before you may convict the Defendant.... You must determine the accuracy of the identification of the Defendant. You must consider the believability of each identification *496 witness in the same way as you do any other witness.... Once, again, I instruct you the burden of proof is on — the burden of proof is on the State and extends to every element of the crime and this specifically includes the burden of proving beyond a reasonable doubt the identity of the Defendant as the person who committed the crimes. If after examining the testimony you have a reasonable doubt as to the accuracy of the identification you must find the Defendant not guilty.
Given the clarity of the jury charge requiring the State to prove identity beyond a reasonable doubt, the PCR court’s finding of no prejudice must be sustained under the any evidence standard of review.
AFFIRMED.
HEARN, J., concurs. PLEICONES, J., concurring in result only. TOAL, C.J., dissenting in a separate opinion in which BEATTY, J., concurs.

. At the time of trial, the second lineup had been lost. However, two police officers and two of the witnesses testified that the photographs in the second lineup were similar to the photographs contained in the first.

. All three witnesses were also permitted to hear Petitioner's voice during the show-up. Again, Fowlkes and Morton stated they recognized Petitioner’s voice from the robbery, while Sessions stated it was not the robber's voice.

. Sessions, however, testified Petitioner was not the robber.

. Defense counsel later objected to the introduction of the photographic identifications after the State requested the store surveillance footage be admitted into evidence, stating, “I mean, Your Honor, for clarification when the lineup was introduced into evidence previously I think I did not voice an objection. I would like the record to reflect that the lineup that was introduced was subject to a previous objection. The court has ruled and admitted that lineup but I’d like the record to reflect that that is subject to our previous objection.”

. Specifically, defense counsel stated that his objection was “[sjubject to [his] previous objection.”

. Defense counsel did object to the introduction of the lineup itself into evidence.

. Petitioner’s mother and girlfriend testified that the only channels available on Petitioner’s television were ABC and FOX. Petitioner, however, testified that his television also received two other channels, including the local CBS channel, which could have aired the CBS affiliated show.

. The court explained that identification testimony is "an expression of belief or impression by a witness,” and the accuracy of the identification must be determined by considering the believability of each identification witness.

. The PCR court also noted that the critical issue in the case was credibility, and not alibi "because the jurors could believe either the State’s identification witness, or they could believe the alibi witnesses, but not both." (emphasis in original).

. The PCR court correctly held that defense counsel’s failure to make a contemporaneous objection constituted deficient performance. See State v. Hoffman, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (reiterating that "[a] contemporaneous objection is required to properly preserve an error for appellate review”).